STATE OF CONNECTICUT *v.* NORBERTO BRICE

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued January 7—decision released March 16, 1982

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Bernard D. Gaffney,* assistant state's attorney, with whom, on the brief, was *John M. Bailey,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. On October 4, 1979, the defendant was found guilty on a trial to the court, after pleading not guilty and electing to waive a jury,[1] of committing the crime of sexual assault in the first degree in violation of General Statutes § 53a-70. He was sentenced to serve a term of not less than four nor more than nine years at the correctional institution at Somers. The defendant has appealed alleging error in the admission and characterization of certain evidence.

The sexual assault occurred on the evening of December 23, 1978, behind a vacant building located at 187 Franklin Avenue in Hartford. The victim, aged nineteen at the time of the assault, had met the defendant, whose nickname was "Milkbone," a week or two before December 23 at a park and recreation center also located in Hartford. On December 23, the victim was walking to visit a friend, Marie, who lived on Franklin Avenue when she came upon the defendant, who then joined her. After meeting with Marie and Marie's boyfriend, Joey, the four visited

---

[1] We note that the judgment provides in part: "Said cause having been fully heard and committed to the jury, they by their verdict on October 4, 1979 find the said Norberto Brice guilty as charged in said information." The transcript and both parties, however, accurately state that the defendant elected to waive a jury and that the matter was tried to the court. The court, *O'Donnell, J.,* granted a motion to rectify the printed record on August 6, 1980 but that correction did not reflect the fact that the defendant elected to waive a jury.

a grinder shop on Franklin Avenue. Marie and Joey soon departed, leaving the defendant and the victim. Since the defendant was concerned that he might be arrested on some outstanding warrants, he suggested that he and the victim leave the grinder shop and cross the street so that they could sit on the steps of a vacant building located at 187 Franklin Avenue.

While sitting on the steps of the vacant building, the two talked, drank some coffee and smoked some marijuana. Suddenly, the defendant struck the victim in the face and stated that if she "didn't give him what he wanted he would take it." The victim began to cry and the defendant told her to shut up. He told her that he had to urinate and that she shouldn't attempt to run away. The defendant then grabbed her and took her to a location to the rear of the building. It was dark and there were no lights at this time. While urinating, he produced a utility knife which was about four inches long. He then took her farther back behind the rear of the building where he held the dull side of the knife to the victim's face while threatening to "slice her" if she did not have sexual relations with him. While pointing the knife directly at her, he pushed her to the ground. The victim removed her pants and underclothes and the defendant subjected her to vaginal intercourse. They remained in this position for about one hour.

After the victim got up from the ground, the defendant forced her to her knees and demanded that she perform fellatio upon him. Instead, the victim clawed the defendant's testicles with her fingernails. The defendant screamed and ran toward Franklin Avenue allowing the victim to flee from the

scene. She thought she left behind her comb and a shoe. The victim flagged down a car and asked to be taken directly to the home of her boyfriend, Carmine, who lived on Victoria Road. At Carmine's house, she told him what had happened and stated "that Milkbone had raped me." [2] The victim refused to speak with anyone else but Carmine. He notified the police, who came to Carmine's home, and she was transported, by ambulance, to Hartford Hospital. The police later recovered the victim's shoe and comb along with the defendant's knife at the scene of the assault.

The defendant claims that the trial court erred in allowing witnesses to recite the victim's accusation against the defendant, because, on direct examination, the victim never testified that she told those witnesses that she had been sexually assaulted by the defendant. He also claims that the court erred in unfairly characterizing the evidence, namely, the hospital's medical report, thereby depriving him of his right to due process.

## I

The defendant's first claim is that the court committed error by allowing certain witnesses to testify that the victim stated that the defendant had raped her. Specifically, he claims that while the "constancy of accusation" exception to the hearsay rule allows such testimony of a witness to be admitted to corroborate the victim's testimony, it is incumbent upon the victim first to testify that she told any such witness that she was sexually assaulted. Since the

[2] The victim knew that Carmine and the defendant had known each other. Carmine and the defendant had lived together for three months early in 1978 and Carmine knew him for about one and one-half to two years before December 23, 1978.

victim in the present case testified that she told only one witness, Carmine, that the defendant had raped her, the defendant argues that the admission of the other witnesses' testimony was erroneous.[3]

In sex-related crime cases, we have long recognized that a witness, to whom a victim has complained of the offense, could testify "not only to the fact that a complaint was made but also to its details." *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101 (1945). See *State* v. *Greene,* 161 Conn. 291, 294, 287 A.2d 386 (1971); *State* v. *Gelinas,* 160 Conn. 366, 367, 279 A.2d 552 (1971); *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969); *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 (1946); *State* v. *Orlando,* 115 Conn. 672, 677, 163 A. 256 (1932); *State* v. *Sebastian,* 81 Conn. 1, 5, 69 A. 1054 (1908); *State* v. *Byrne,* 47 Conn. 465, 466 (1880); *State* v. *Kinney,* 44 Conn. 153, 155–57 (1876); *State* v. *De Wolf,* 8 Conn. 93, 99 (1830). "Such testimony is admitted . . . when the complainant first has testified, in court, to the facts of the alleged occurrence, in order to corroborate her testimony. *State* v. *Orlando,* supra, [677]. She is then permitted to state that she made complaint to

[3] We note that the victim also testified, on direct examination, that she identified a photo of the defendant for the police officers at the hospital's emergency room while she was being treated shortly after the incident. She testified that, with the police officers present, she stated that the defendant was the person who assaulted her. We conclude that this was the equivalent, practically speaking, of an "accusation" for the purposes of the constancy of accusation exception to the hearsay rule under the circumstances of this case.

Both officers Peter Darby and Robert Lajoie later testified to this statement by the victim. Even if the defendant had made a proper objection based on constancy of accusation to both officers' testimony, such an objection would probably have been overruled because their testimony merely corroborated the victim's accusation. Neither party nor the trial court drew attention to this matter at any time.

454

some other person. Thereupon, the person to whom she complained, out of court and in the absence of the defendant is permitted to testify . . . ." *State* v. *Segerberg,* supra, 549.[4] The corroborating statements are "received to shew [sic] *constancy* in the declarations of the witness." (Emphasis in original.) *State* v. *DeWolf,* supra, 100; see *State* v. *Orlando,* supra. "It is manifest that the rule of 'constancy of accusation' applies only when the complainant has testified." *State* v. *Segerberg,* supra, 549.

At trial, five different witnesses testified that the victim stated that the defendant had raped her. The vicim testified that she told one witness, Carmine, that the defendant had raped her[5] but couldn't remember if she told anyone else. Since the *Segerberg* case, supra, requires that the victim first testify that she made the accusation to other persons, the testimony of the remaining four witnesses concerning the "constancy of accusation" might have been excluded, upon a proper objection,

[4] It is reasonable to require that the victim, when she testifies, name those to whom she made complaint where she specifically knew those persons prior to the incident such as a relative, close friend, etc. It would be less reasonable to expect the victim, when she testifies, to name specifically a police officer, doctor, nurse, etc. whom she did not know before the incident but to whom she did, in fact, make complaint. Nevertheless, as to the latter circumstance, it is a preliminary question of fact for the trial court to decide whether any such proffered witness was the person to whom complaint was allegedly made. See *Engelke* v. *Wheatley,* 148 Conn. 398, 411, 171 A.2d 402 (1961).

[5] The defendant objected to this statement by Carmine on two grounds. First he stated that there was no unbroken chain of constancy of accusation because there was an intervening person (i.e., the individual who drove the victim to Carmine's house) to whom the victim said nothing. Second, he stated that the witness did not occupy such a close position or relationship with the victim at the time of the statement so as to permit the witness to testify to the accusation that the vicim has made. The court overruled this objection.

because the victim did not so testify.[6] Upon review-
ing the transcript, however, we conclude that no
proper objection was made, nor was an exception
taken to any of this testimony.

The transcript reveals that when Officer Peter
Darby of the Hartford Police Department attempted
to testify about the statements made by the victim,
the defendant objected on the ground that such testi-
mony would be repetitious.[7] When Officer Jerome
Johnson, also of the Hartford Police Department,
testified as to what the victim said, the defendant
made no objection at all. The victim's mother testi-
fied to what her daughter had told her concerning
the attack and the defendant's objection, based on
the repetitiousness and the timeliness of the state-

---

[6] See footnote 3, supra.

[7] (By Mr. Gaffney) "Q. Did the victim give you or Detective Lajoie
in your presence an account of what had happened to her?

"A. Yes.

"Q. And what do you recall her saying?

"MR. EISENMAN: Objection. I assume that this is going to be
on the basis of constancy of accusation. If it isn't, of course it is
hearsay. But if that's the exception as claimed, I have an argument
to that. If the Court could inquire whether that's the exception
claimed?

"THE COURT: What's your claim?

"MR. GAFFNEY: Yes, it is, Your Honor, yes. It would be an
exception to the hearsay rule. Yes.

"MR. EISENMAN: We have already had testimony by way of
constancy of accusation. *Now we are getting into repetition of a
prior consistent statement.* And those prior consistent statements in
and of themselves, as I understand the law, are barred. I do grant
that an exception to the hearsay rule is constancy of accusation.
*But this now becomes inadmissible under the other rule that prohibits
the introduction of prior consistent statements.*

"THE COURT: I understand it is not being offered for that
purpose. You can offer it for constancy of accusation.

"MR. EISENMAN: We have already had that.

"THE COURT: That's not limited to one witness. It's not my
understanding. Is my understanding correct you are offering it as
constancy of accusation?

ments, was overruled.[8] The final witness to testify about the victim's complaints against the defendant was Detective Robert Lajoie of the Hartford Police Department. Again, the defendant's objection on the ground of repetitiousness was overruled.[9]

---

"MR. GAFFNEY: Yes. And then I make the claim, as Your Honor has indicated, that exception to the hearsay rule is not limited to one witness.

"THE COURT: That's my understanding. And if that's the basis of your objection, I will overrule the objection. You may have an exception.

"MR. EISENMAN: Well, further, the witness to whom the constancy of accusation is weighed by testimony—not someone who was within audible or hearing distance of the statement. This officer's testimony, as I understood it, that she made the statement to someone else. So she didn't even make it to him.

"MR. GAFFNEY: Well, it is the accusation that is admissible. I don't think it is a matter of who did the questioning or to whom the statement may have been made. It's an accusation, a constant accusation made, if the witness heard that.

"THE COURT: He was present in the room as a part of the investigation when the accusation was made. I will allow it. He may answer." (Emphasis added.)

[8] (By Mr. Gaffney) "Q. And what did your daughter tell you?

"MR. EISENMAN: I object. This goes beyond constancy of accusation due to the passage of time. We already had several repetitions of that. And if it isn't a constancy of accusation then it is hearsay.

"THE COURT: Mr. Gaffney.

"MR. GAFFNEY: Well, it is offered under the constancy exception. I don't know that mere repetition is a ground for excluding that kind of evidence. And I certainly don't think that insofar as the time is concerned we are talking about a—it's still a very brief period. So I claim it.

"THE COURT: Well, I think the question is what did she say. I'm going to allow her to answer."

[9] (By Mr. Gaffney) "Q. In other words, you talked with the victim and obtained her story?

"A. Yes.

"Q. And what did she tell you?

"MR. EISENMAN: Objection. Your Honor, the rule again—I assume that the reason that this hearsay testimony is about to be elicited is the exception to the hearsay rule, constancy of accusation. But in the English language I think there is a difference between

" 'Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted.' *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 3 A.2d 224 (1938); *State* v. *Rado,* 172 Conn. 74, 81, 372 A.2d 159 (1976); *State* v. *Johnson,* 166 Conn. 439, 444–45, 352 A.2d 294 (1974); *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622 (1957)." *State* v. *Adams,* 176 Conn. 138, 144–45, 406 A.2d 1 (1978); see also Practice Book § 3063. "To assign error in the court's evidential ruling on the basis of objections never raised at the trial amounts to trial by ambuscade of the trial judge. *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 [1960]. . . . 'This court is not bound to consider claims of law not made at the trial. *Harry* v. *Bidwell,* 149 Conn. 93, 98, 175 A.2d 704 [1961]. This rule applies to criminal as well as civil cases. *State* v. *Sul,* 146 Conn. 78, 81, 147 A.2d 686 [1958]. While it is true that we have applied this rule with some flexibility in capital cases, such as in *State* v. *Walters,* 145 Conn. 60, 138 A.2d 786 cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45 [1958], and *State* v. *Reid,* 146 Conn. 227, 149 A.2d 698 [1959], this policy does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal. Under such a

constancy and persistency and repetition. If we are to hear the story again it gets into persistency and repetitiousness. And at this stage I think it is fair to say it is unduly repetitious. I object on that basis.

"THE COURT: All right. Objection is overruled and an exception is noted.

"MR. EISENMAN: Thank you, Your Honor."

procedure (1) claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and (2) the appellee, here the state, would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the accused would, in the event of a conviction, claim that such a course of conduct involved rulings which were erroneous and prejudicial to him.' *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362 [1965], cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 [1966]; see also Practice Book § [288]." *State* v. *Johnson,* 166 Conn. 439, 444–45, 352 A.2d 294 (1974).

Moreover, the defendant has not stated nor do we find any "exceptional circumstance" why this ruling should be considered in the absence of a proper objection. *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576 (1973).[10]

## II

The defendant's final claim of error relates to the trial court's characterization of statements contained in the hospital record as being "consistent" with the victim's statements. The defendant claims that the hospital report impeaches the victim's credibility because it stated that the victim said the defendant had ejaculated, whereas the report stated "no motile or non-motile sperm seen." This contradiction, he claims, not only undermined the victim's

---

[10] We also note that the trial court could have found the defendant guilty on the basis of the victim's testimony alone. "Corroboration is not essential in cases of this character. *State* v. *Zimnaruk,* 128 Conn. 124, 126, 20 A.2d 613 [1941]; *State* v. *Lattin,* 29 Conn. 389 [1860]." *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377 (1946). See also *State* v. *Chuchelow,* 131 Conn. 82, 37 A.2d 689 (1944).

credibility but also amounted to a misuse of the facts by the court thereby depriving the defendant of a fair trial.

"We have repeatedly stated that our review of the conclusion of the trier of fact, whether it be a judge, a panel of judges, or a jury, is limited. See *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *DiBattista,* 110 Conn. 549, 148 A.2d 664 (1930). Upon a verdict of guilty, we review the evidence in the light most favorable to sustaining the verdict. *State* v. *Zdanis,* 182 Conn. 388, 391, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981)." *In re Juvenile Appeal,* (Docket No. 9268) 184 Conn. 157, 169–70, 439 A.2d 958 (1981). "In testing the validity of the court's conclusions, we follow well settled principles. They are tested by the subordinate facts found by the trial court and, if the conclusions are logically supported by the facts, they must stand unless they violate law, logic or reason. *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 581, 370 A.2d 1061 [1976]; *Nicoli* v. *Frouge Corporation,* 171 Conn. 245, 248, 368 A.2d 74 [1976]; *White Oak Corporation* v. *State,* 170 Conn. 434, 438, 365 A.2d 1162 [1976]." *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 539–40, 391 A.2d 170 (1978).

Upon reviewing the entire record before us, including the medical report, we cannot say that the court erred in concluding that the medical report was consistent with the victim's statements.[11] Any minor inconsistency would affect the credibility of

[11] The report accurately reflected the victim's testimony concerning the abrasions to her knees and elbows.

the testimony and it is well settled that the credibility and weight to be accorded to a witness' testimony are within the province of the trier of fact. *Lukas* v. *New Haven,* 184 Conn. 205, 208, 439 A.2d 949 (1980); *Toffolon* v. *Avon,* 173 Conn. 525, 530, 378 A.2d 580 (1977); *Whitney* v. *Whitney,* 171 Conn. 23, 32, 368 A.2d 96 (1976). The court did not act unreasonably by according greater credibility to the victim than to the defendant. *State* v. *Chuchelow,* 131 Conn. 82, 83, 37 A.2d 689 (1944).

There is no error.

In this opinion the other judges concurred.