STATE OF CONNECTICUT *v.* EMMETT HARRIS
(3855)

HULL, DALY and BIELUCH, Js.

Argued December 9, 1986—decision released March 17, 1987

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, was *Donald D. Dakers,* public defender, for the appellant (defendant).

*Robert J. Murphy,* special deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Julia DiCocco Dewey* and *Robert Devlin,* assistant state's attorneys, for the appellee (state).

HULL, J. After a trial to a jury, the defendant was convicted of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) and 53a-49 (a) (2), and unlawful restraint in the first degree in violation of General Statutes § 53a-95. The defend-

ant appeals from the judgment rendered thereafter, claiming that the trial court erred (1) in admitting into evidence photographs of the scene of the crime, (2) in admitting hearsay evidence unnecessarily prejudicial to the defendant, (3) in permitting the state to present evidence of the defendant's prior convictions for assault and larceny, (4) in precluding the defendant from introducing evidence of a criminal charge pending against the complainant, (5) in permitting the state to introduce and read to the jury the complainant's entire written statement to the police, and (6) in denying the defendant's motion to suppress evidence seized from the scene of the crime.

The jury could reasonably have found the following facts. On the afternoon of March 29, 1984, the complainant and the defendant, who knew each other from their mutual place of employment, accidentally met at the Chapel Square Mall in New Haven. After conversing with the defendant for approximately fifteen minutes, the complainant requested that he give her a ride to another location. On the way, the defendant stopped his car at a Hazel Street residence and invited the complainant inside. He led her to a bedroom located on the left side of the first floor hallway. After a brief conversation, the defendant indicated that he wanted to have sex. The complainant refused. The defendant then pushed the complainant down on the bed, tore her sweater, and attempted to remove her pants. When the complainant resisted, the defendant choked and punched her, leaving bruises along her neck and collar bone area. An unidentified man subsequently came to the bedroom door and requested that the defendant come out. Both the defendant and the complainant left the bedroom. The two struggled in the hallway for a brief time before one or two unidentified males restrained the defendant. The complainant was then able to run from the home.

The complainant ran to a nearby bar and called the police. An officer arrived approximately ten minutes later. After being joined by a police detective, the complainant led the officer and the detective to the Hazel Street residence.[1] When they arrived, only Kevin Harris, the brother of the defendant, was at the residence. The police searched the house, but did not enter the bedroom in question.

The officers then obtained a written consent from Kevin Harris to search the bedroom. The officers recovered personal effects of the complainant, including her pocketbook, eyeglasses, cigarette lighter and earrings, which were scattered around the room. The detective then called the New Haven police department's bureau of identification to photograph the bedroom. While at the premises, the complainant identified a photograph of the defendant as that of the individual who attempted to rape her. The defendant was subsequently arrested when he went to the police station to arrange bail for his brother, who had been arrested on unrelated charges.

Prior to trial, the defendant moved to suppress the introduction of a photograph of the bedroom which revealed wall posters of "scantily-clad" women. That motion was denied without written opinion. A motion to suppress the physical evidence seized from the bedroom was also denied.

At trial, the photograph from which the complainant identified the defendant was introduced into evidence. The state was also permitted to introduce a signed statement, made by the complainant, recounting the details of the crime. Over the objection of the defendant, the court admitted the statement on the basis of the doctrine of constancy of accusation and as a prior consistent statement.

---

[1] The residence was owned by the parents of Kevin and Emmett Harris, although they did not reside there.

The defendant called a number of character witnesses to testify on his behalf. These included the defendant's girlfriend, Eva Bell. On cross-examination, the state was permitted to question this witness as to the defendant's prior convictions for assault and larceny. Over the defendant's objection, the testimony was permitted as character evidence.

At the conclusion of his case, the defendant attempted to introduce a copy of court records showing that there was a criminal charge pending against the complainant. The court sustained the state's objection to the introduction of this evidence.

I

Because of our decision with respect to the defendant's last claim of error, we will consider that issue first.

The defendant claims that the trial court erred in denying his motion to suppress tangible evidence seized from the crime scene pursuant to a warrantless search. We agree.

The facts related to this claim are as follows. After the victim met the police officer and detective at a nearby bar, the three went to the Hazel Street residence. The individual who opened the door, and was later discovered to be Kevin Harris, refused to identify himself. The detective briefly searched all the rooms on the first floor except the bedroom where the incident took place. The detective then questioned Kevin Harris, who stated that he owned the residence. The detective then asked for and obtained Kevin Harris' written consent to search the first floor bedroom. Kevin Harris opened the bedroom door and the detective was able to observe the complainant's pocketbook, eyeglasses and jewelry. The detective did not enter the room at that time, but called the New Haven police

department bureau of identification to search the room. The room was subsequently searched and a number of items were seized.

The defendant argues that the tangible evidence should have been suppressed because the investigating officers failed to obtain the defendant's consent to search the bedroom, and because the warrantless search was not justified by any exigency. The state asserts that the trial court properly denied the defendant's motion to suppress because the defendant failed to assert a subjective expectation of privacy in the bedroom, and because the investigating officers lawfully obtained access to the scene of the crime under the "hot pursuit" and "consent" exceptions to the warrant requirement.

One of the most fundamental propositions of our criminal jurisprudence is that " 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " (Emphasis in original.) *Coolidge* v. *New Hampshire*, 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 443, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971).

As the state points out, however, before a "search and seizure" are said to be subject to the protection of the fourth amendment, a two-fold requirement must be met. *Katz* v. *United States,* 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring). The first question is whether the person who is the focus of the inquiry has "exhibited an actual (subjective) expectation of privacy and, second . . . [whether] the expectation be one that society is prepared to recognize as 'reasonable.' " *Katz* v. *United*

States, supra, 361; *State* v. *Zindros*, 189 Conn. 228, 238–39, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

The burden of proof as to whether the defendant had a reasonable expectation of privacy is on the defendant. *Rawlings* v. *Kentucky*, 448 U.S. 98, 104–105, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *State* v. *Brown*, 198 Conn. 348, 356, 503 A.2d 566 (1986). While we appreciate the state's assertion that the defendant did not clearly establish a subjective expectation of privacy in that he did not testify at the suppression hearing, we conclude that the defendant presumptively had an actual and legitimate expectation of privacy in what the state conceded was the defendant's bedroom. See *United States* v. *Arboleda*, 633 F.2d 985, 992 (2d Cir. 1980); *State* v. *Brown*, supra, 357; *State* v. *Benton*, 10 Conn. App. 7, 10, 521 A.2d 204 (1987). There was testimony at the suppression hearing that Kevin Harris resided on the second floor of the Hazel Street residence, not the first floor, where the defendant's bedroom was located. Kevin Harris testified at the hearing that the bedroom in question was exclusively under the control of the defendant. We conclude that, despite the defendant's refusal to testify at the suppression hearing, it was established that he had an actual, subjective expectation of privacy in the room, and that the expectation was clearly a reasonable one.

"Two recognized exceptions to the warrant requirement are where searches have been undertaken pursuant to (1) 'exigent circumstances'; see, e.g., *Mincey* v. *Arizona*, 437 U.S. 385, 392–94, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Terry* v. *Ohio*, 392 U.S. 1, 25–26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Runkles*, 174 Conn. 405, 412, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978); and (2) consent. See, e.g., *David* v. *United States*, 328 U.S. 582, 593–94, 66 S. Ct. 1256, 90 L. Ed.

1453, reh. denied, 329 U.S. 824, 67 S. Ct. 107, 91 L. Ed. 700 (1946); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978). The exceptions 'have been jealously and carefully drawn.' *Jones* v. *United States,* 357 U.S. 493, 499, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1958); see *State* v. *Krause,* 163 Conn. 76, 80, 301 A.2d 234 (1972). The burden of proof is upon the state to show that an exception exists. *Coolidge* v. *New Hampshire,* supra, 455; see *McDonald* v. *United States,* 335 U.S. 451, 456, 69 S. Ct. 191, 98 L. Ed. 153 (1948); *Dotson* v. *Warden,* supra, 618; *People* v. *Reed,* 393 Mich. 342, 362, 224 N.W. 2d 867, cert. denied, 422 U.S. 1044, 95 S. Ct. 2660, 45 L. Ed. 2d 696 (1975). The Connecticut and United States constitutions 'equally and conjointly prohibit unreasonable warrantless searches of private property. U.S. Const. amends. IV and XIV, § 1, Conn. Const. art. I, § 7.' *Dotson* v. *Warden,* supra." *State* v. *Zindros,* supra, 237–38, 456 A.2d 288 (1983).

" 'In *Schneckloth* v. *Bustamonte,* 412 U.S. 218 [93 S. Ct. 2041, 36 L. Ed. 2d 854] (1973), the Court reaffirmed the principle that the search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment.' *United States* v. *Matlock,* 415 U.S. 164, 165–66, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). The general rule of law is that a landlord may not consent to a search of the tenant's premises . . . even where the landlord has some right to enter for purposes of inspecting and cleaning. *Chapman* v. *United States,* 365 U.S. 610, 616–17, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961). Professor LaFave, in stating that the general rule is that a lessor cannot give consent to a warrantless search of the premises occupied by his tenant, says: 'The rule is not otherwise merely because the lessor has by express agreement or by implication reserved the right to enter for some special and limited purpose.' 2 [W.] LaFave, Search and Seizure § 8.5 (a), p. 739.

The state has the burden of proof on the issue of consent and that burden is not discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper* v. *North Carolina,* 391 U.S. 543, 548–49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); see *United States* v. *Mendenhall,* 446 U.S. 544, 557, 100 S. Ct. 1870, 64 L. Ed. 2d 497, reh. denied, 448 U.S. 908, 100 S. Ct. 3051, 65 L. Ed. 2d 1138 (1980)." *State* v. *Zindros,* supra, 243–44.

In the present case, the detective testified that consent from Kevin Harris was deemed sufficient because Kevin had stated that he was the owner of the house. Although the detective claimed that Kevin also told him that his brother, the defendant, did not live at the house and he did not know where he lived, the detective acknowledged on cross-examination that he had doubts about Kevin's statement at the time, and testified at trial that in fact Kevin had also told him that the room in question was used by the defendant "to take care of business." The detective testified further that he found a diploma and Blue Cross card in the house with the defendant's name on them.

The state argued in support of the search that even if the bedroom was the defendant's, Kevin's authorization was sufficient under the "apparent authority" principle adopted by New York and other jurisdictions. In *State* v. *Zindros,* supra, the Connecticut Supreme Court made reference to the apparent authority doctrine, although not expressly adopting it for Connecticut. The court cited *People* v. *Adams,* 53 N.Y.2d 1, 8–9, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981). In doing so, however, the court made a point of noting that "the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency by unrealistic doctrines of 'apparent authority.' " *State* v. *Zindros,* supra, 252, quoting *Stoner* v. *California,* 376 U.S. 483, 488, 84 S. Ct. 889, 11 L. Ed. 2d 856, reh.

denied, 377 U.S. 940, 84 S. Ct. 1330, 12 L. Ed. 2d 303 (1964). It went on to quote the following passage from *People* v. *Adams,* supra. "We emphasize that the police belief must be reasonable, based upon an objective view of the circumstances present and not upon the subjective good faith of the searching officers. Moreover, a warrantless search will not be justified merely upon a bald assertion by the consenting party that they possess the requisite authority. Nor may the police proceed without making some inquiry into the actual state of authority when they are faced with a situation which would cause a reasonable person to question the consenting party's power or control over the premises or property to be inspected." Id., 253. Likewise, another recent ruling from New York held that a search conducted under circumstances almost identical to those here did not satisfy the apparent authority requirements. *People* v. *Petrie,* 89 App. Div. 2d 910, 911, 453 N.Y.S.2d 725 (1982).

The record does not establish an exception based on apparent authority, even if this court were to decide as a matter of first impression that this doctrine applies in Connecticut. First, the testimony from the state's own witnesses places doubt on whether the police even had a subjective belief that the room in question was not under the defendant's exclusive control. Second, good faith ignorance of the law has never constituted an exception to the warrant requirement. Thus, the detective's mistaken view that title to the house was determinative of authority to consent adds nothing to the state's claim. *State* v. *Zindros,* supra, holds that property ownership does not confer authority, apparent or otherwise, to consent to police intrusion on the constitutionally protected privacy interests of another person using the premises. Here, there was no claim, let alone showing, that the bedroom in question was one over which Kevin had common authority. Third,

the police here had ample opportunity to conduct "some inquiry" concerning the defendant's residence at the address in question. As defense counsel argued in support of his motion, the detective communicated with the police records room on the phone prior to the search, with information available as to the defendant's residence at that address. They had also just been told by the complainant that the defendant had taken her to that address, presumably let himself in, and allegedly spent two hours alone with her in this bedroom. Nor is there any testimony or evidence whatsoever that Kevin Harris had ever told any officer that the room in question was his. On the contrary, he was alleged to have stated that it was a room used by the defendant, and the detective already knew that Kevin's bedroom was on the second floor.

On this record, without any evidence that the consenting party possessed common authority over the bedroom searched, we find that the consent exception to the warrant requirement was not present here.

Our Supreme Court addressed the difficult question of the exigent circumstances exception to the warrant requirement in *State* v. *Guertin,* 190 Conn. 440, 461 A.2d 963 (1983). " 'The phrase "exigent circumstances" refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978). The parameters of exigent circumstances are neither so well defined nor so sharply delineated that the phrase may be regarded as a free port of entry for all purposes. Circumstances which may be regarded as sufficiently exigent for a warrantless entry into an automobile may not be sufficient for a warrantless entry into a home. Physical entry of the home is the chief evil against

which the wording of the fourth amendment is directed. *Warden* v. *Hayden*, 387 U.S. 294, 301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967)." *State* v. *Guertin*, supra, 447.

The three general categories which the Supreme Court has identified as emergency situations justifying a warrantless search are those involving (1) danger to human life, (2) destruction of evidence and (3) flight of a suspect. *State* v. *Guertin*, supra, 448. We do not find any of these exigent circumstances to be present in this case.

In *Guertin*, the defendant acknowledged his presence. The police heard the sound of an opening window in the dead of winter indicating imminent flight from the hotel in question. The police had no other available information on identification of the suspect. The crime involved the threat of the use of a weapon, and it would have been "extremely difficult" to have secured the building against the possibility of escape.

In this case, the state failed to establish the prerequisite "compelling necessity for immediate action." *State* v. *Guertin*, supra, 450–51. On the contrary, after the police met the defendant's brother at the front door, and walked in uninvited, they deliberately avoided entering the room identified as the alleged crime scene. Rather, they went through every other room in the downstairs apartment, in the course of which they discovered a high school diploma bearing the defendant's name. They thereafter obtained identification from the defendant's brother, and made contact with the New Haven police department records room where information on the home address of both the defendant and his brother was available.

By that time, the room, its door still unopened, had been secured. An officer stood guard in the hallway outside the only door to the room, awaiting arrival of officers from the identification unit. He testified at trial

that "shortly after" police entry into the house it had been determined that the defendant was not on the premises, and that the police then had a " 'new situation procedurally'—going from an 'apprehension situation' to an 'investigative type situation.' " At that point, the police tactics took on a "different posture," involving the securing of the scene for ultimate acquisition of evidence.

The only purpose in entering the defendant's room after that point had been reached, without a warrant, was one of convenience. Admittedly it was more efficient and less cumbersome to act, as the officers did, opening the door to the room, bringing the complainant to the doorway, looking for evidence, and photographing and seizing all evidence of possible value to use against the defendant. As *State* v. *Guertin,* supra, instructs, however, convenience and desire to secure evidence helpful to conviction are *not* grounds for dispensing with the warrant procedure. In this case, the state failed to meet its burden of proving exigency such that there were no reasonable alternatives to the warrantless search conducted. The testimony of the state's own witnesses, particularly the uncontradicted testimony of the officer, was directly to the contrary.

We conclude that the trial court erred in denying the defendant's motion to suppress. The defendant clearly had a reasonable expectation of privacy in what was undisputedly his bedroom. The state has failed to show that any exception to the warrant requirement existed. The fruits of that warrantless search should therefore have been suppressed.

The state argues that if error is found, it is nonetheless harmless. When an error is of a constitutional nature, it is reversible unless the state proves that the error is harmless beyond a reasonable doubt. *State* v. *Camerone,* 8 Conn. App. 317, 329, 513 A.2d 718 (1986).

The state had not met its burden in this case. This is not a situation, as was found in *State* v. *Cohane,* 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), in which the remaining evidence is so overwhelming that we can conclude as a matter of law that the jury's verdict was not influenced by the admission of this evidence. On the contrary, the evidence was extremely damaging to the defendant's case. His defense was that, although the complainant was in his bedroom, no struggle occurred. The jury could easily have been influenced by evidence that so clearly corroborates the complainant's version of the facts.

While the conclusion reached above requires us to order a new trial, we discuss the various issues raised by the defendant in his remaining claims to the extent that these may arise at the new trial. *State* v. *Keiser,* 196 Conn. 122, 131, 491 A.2d 382 (1985).

## II

The defendant claims that the trial court erred in admitting a photographic exhibit of the scene of the crime into evidence. The defendant asserts that this admission injected needless and unfair prejudice into the defendant's trial, in that the defendant was charged with sexual assault and the photograph showed wall posters of scantily-clad women.

The defendant did not raise the claim that the photograph should have been suppressed as the fruit of an illegal search. We will, however, "in the interest of justice notice [the] plain error" not brought to the court's attention. See Practice Book § 4185 (formerly § 3063); *State* v. *Jackson,* 198 Conn. 314, 321, 502 A.2d 865 (1986).

"A Fourth Amendment search occurs when the government invades an area in which a person enter-

tains a legitimate or justifiable expectation of privacy. *Rakas* v. *Illinois,* 439 U.S. 128, 143, & n. 12, 99 S. Ct. 421, 430, & n. 12, 58 L. Ed. 2d 387 (1978)." *United States* v. *Reed,* 733 F.2d 492, 500 (8th Cir. 1984); see also *Illinois* v. *Andreas,* 463 U.S. 765, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983).

When a police officer pushes open a door and enters a place where a person has a reasonable expectation of privacy, with the intention of looking for a person or evidence, a search has taken place. *Washington* v. *Simpson,* 806 F.2d 192, 196 (8th Cir. 1986). Further, taking a photograph of a place where an illegal search has taken place can constitute an illegal seizure. See *United States* v. *Espinoza,* 641 F.2d 153, 166 (4th Cir. 1981); *United States* v. *Johnson,* 452 F.2d 1363, 1371–72 (D.C. Cir. 1971).

As we have concluded that the search of the defendant's bedroom and the seizure of tangible evidence were illegal, so do we conclude that the photograph taken of the room was illegal and should have been suppressed. The photograph was as much the fruit of an illegal search as was the tangible evidence seized, in that the police ordered the defendant's brother to open the door to the defendant's bedroom and entered the room to take the photograph.

### III

The defendant's next claim is that the court erred in admitting a police photograph of the defendant and hearsay testimony concerning his identification, despite the defendant's willingness to stipulate to his identity.[2]

---

[2] We note that this claim was not included in the defendant's preliminary statement of issues pursuant to Practice Book § 3012 (a). In the past, we have declined to address issues not properly presented to this court. Under the revised Practice Book § 3012 (a) (now § 4013) effective October 1, 1986, and made applicable to pending appeals by Practice Book § 4189 (formerly § 3166), the defendant's failure to identify this issue in his pre-

## A

In his pretrial motion *in limine,* and at the time of the state's offer of the photograph, the defendant contended that the photograph was a "mug shot" and therefore suggested to the jury that the defendant had an arrest record. See *State* v. *Pecoraro,* 198 Conn. 203, 205, 502 A.2d 396 (1985).

Our courts have recognized the potentially prejudicial effect of exposing a jury to mugshots. *State* v. *Pecoraro,* supra, citing *State* v. *Albin,* 178 Conn. 549, 553, 424 A.2d 259 (1979); *United States* v. *Watts,* 532 F.2d 1215 (8th Cir. 1976), cert. denied, 429 U.S. 847, 975 S. Ct. 131, 50 L. Ed. 2d 119 (1976). We have also recognized, however, that the prejudicial impact of "mugshots" is greatly diminished when there is a lack of identifiable police markings on the photograph. *State* v. *Robertson,* 172 Conn. 9, 10, 372 A.2d 128 (1976); *State* v. *Woods,* 171 Conn. 610, 612–13, 370 A.2d 1080 (1976). The introduction of the mugshot into evidence cannot be said to have violated notions of fundamental fairness. The manner in which the photograph was introduced was unexceptionable. The photograph was never referred to as a "mugshot" and all police data was removed from it or covered with an "exhibit" sticker. The photograph bore no visible identification numbers or other incriminating data. It revealed no handcuffs or background indicating that it was taken at a police station. Although we may have decided the issue of admissibility of the mugshot differently had we presided at the defendant's trial, we cannot say that the trial court's admission of the photograph was an abuse of discretion.

liminary statement of issues does not preclude its review unless the state is prejudiced thereby. The state does not argue, nor do we consider, that it would be prejudiced by our review of this issue. See *State* v. *McIver,* 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986).

## B

The defendant also claims that the trial court erred in admitting two out-of-court statements introduced by the detective on the stand. The detective testified that he phoned the New Haven police department and was told that there was an outstanding arrest warrant for the defendant's brother. The defendant objected to this evidence, claiming that the witness did not have personal knowledge of the matter. The trial court overruled the objection and admitted the statement. The detective then testified that Kevin Harris had indicated "with a smile on his face" that the defendant had used the room to "take care of business." Again, the court admitted the evidence over the defendant's objection.

The statements made are clearly hearsay and are thus inadmissible absent a recognized exception to the hearsay rule. *State* v. *Barlow,* 177 Conn. 391, 396, 418 A.2d 46 (1979); C. Tait & J. LaPlante, Connecticut Evidence § 11.1. Neither the state nor the court cited any recognized exception to the hearsay rule to justify the admission of this testimony. The court therefore erred in admitting the testimony.

## IV

The defendant next claims that the trial court erred in allowing the state to introduce evidence of the defendant's previous convictions for assault and larceny. This information was introduced during cross-examination of the defendant's character witness.

The following is a synopsis of the testimony in issue. Defense counsel asked the witness if she believed that the defendant was well-liked and "got along well" with coworkers. She responded that he "was very well-liked there." In response to the question of whether she had an opinion as to whether the defendant "is the type

of person who would compel women to engage in sexual intercourse against their will," she responded "I don't . . . believe that he would do something like that." On cross-examination, the state questioned the witness as to whether her opinion would be changed in light of the defendant's convictions for larceny and assault.

When a character witness has given his opinion as to a particular trait, the state may cross-examine that witness concerning prior convictions, not to prove the truth of such facts, but to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy. *State* v. *Carter,* 189 Conn. 631, 642, 458 A.2d 379 (1983).

The obvious purpose of the state's question regarding the convictions was to test the accuracy of the witness' assessment of the defendant's character and "the good faith with which he testified." *State* v. *Turcio,* 178 Conn. 116, 125–26, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). The questioning in the present case with respect to the assault conviction was reasonably designed to elicit evidence of behavior on the part of the defendant which, if the witness were aware of it, would seriously discredit her opinion of the defendant's character as that of one who would not commit a violent act. The crime of assault is a violent crime, and knowledge of a conviction for assault could clearly affect the credibility of testimony that the defendant was not the type of person who would commit the violent crime of compelling a woman to engage in sexual intercourse. See generally C. Tait & J. LaPlante, Connecticut Evidence § 8.4 (e); 3A J. Wigmore, Evidence (Chadbourn Rev.) § 982. Consequently, we find that the assault conviction was properly introduced.

The conviction for larceny, however, does not have any direct bearing on the defendant's tendency to be

violent, and therefore has no effect of the credibility of the witness. When the basis of the witness' opinion is attacked by questioning him as to his knowledge of prior convictions, such acts must be relevant to those convictions. *State* v. *Binet,* 192 Conn. 618, 622–23, 473 A.2d 1200 (1984). The crime of larceny relates to the trait of honesty, not violence. The trial court therefore erred in permitting the state to question the witness as to the defendant's larceny conviction.

## V

The defendant's next claim is that the court erred in precluding the defendant from introducing evidence of a nolled criminal charge against the complainant. At the conclusion of his case, the defendant offered into evidence a certified copy of court records showing that there had been a disorderly conduct charge pending against the complainant in the same judicial district as the case on trial, and that a nolle had been entered. In support of the admission, defense counsel stated that "I am offering it . . . on the grounds that the fact that a state witness in this case, has a charge pending . . . is a highly pertinent issue on the credibility of a witness . . . ."

We agree that a pending criminal charge is probative on the issue of the witness' credibility. A nolled criminal charge, however, is not considered to be pending. Upon entry of a nolle, unless opened, all charges are dismissed. *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 5, 273 A.2d 709 (1970), cert. denied, 402 U.S. 938, 91 S. Ct. 931, 28, L. Ed. 2d 218 (1971); *State* v. *Anonymous (1980-2),* 36 Conn. Sup. 91, 92, 412 A.2d 708 (1980); see generally General Statutes § 54-56b. In this case, the witness' nolled charge had been disposed of, and could have been opened for a limited period of time only for specified reasons. Nothing this witness could have said on the stand regard-

ing the defendant would have any impact on the disposition of her nolled criminal charge. The policy reasons for allowing evidence of pending criminal charges are not present here. We therefore conclude that the trial court acted correctly in excluding evidence of the complainant's nolled criminal charge.

## VI

The defendant's final claim is that the trial court erred in permitting the state to introduce and read to the jury the complainant's entire written statement to the police. He asserts that in allowing the statement to be admitted as a full exhibit, the trial court erroneously applied the constancy of accusation and prior consistent statement exceptions to the hearsay rule. *State* v. *Hamer,* 188 Conn. 562, 452 A.2d 313 (1982), addressed a constancy of accusation claim similar to the one in the present case. "Although generally prior consistent statements are barred by the hearsay rule if sought to be used to prove the truth of the matters asserted therein; *State* v. *Dolphin,* 178 Conn. 564, 568, 424 A.2d 266 (1979); there are exceptions. In sex-related cases witnesses to whom the complainant has related the particulars of the incident are permitted to recount the details of the statement; *State* v. *Brice,* 186 Conn. 449, 453, 442 A.2d 906 (1982); provided that the complainant first testifies concerning the offense; *State* v. *Segerberg,* 131 Conn. 546, 548–49, 41 A.2d 101 (1945); and also identifies the persons to whom she made the statement. *State* v. *Brice,* supra, 453–55. The statement is admissible as an exception to the hearsay rule to corroborate the complainant's testimony by showing constancy of accusation. *State* v. *Brice,* supra, 453; *State* v. *Orlando,* 115 Conn. 672, 677, 163 A. 256 (1932). The statements being admissible when offered by the state it is immaterial that they are offered through the testimony of the declarant rather than the listener." *State* v. *Hamer,* supra, 564–65.

As noted in the *Hamer* case, the complainant must testify to the making of the prior statement, and to the identity of the person or persons to whom it was made in order to qualify under the constancy of accusation exception to the hearsay rule. See *State* v. *Ouellette,* 190 Conn. 84, 97, 459 A.2d 1005 (1983); *State* v. *Brice,* supra, 453–54, C. Tait & J. LaPlante, Connecticut Evidence § 11.22. In the present case, this requirement was not satisfied. The complainant never testified about making a statement to the police. The necessary foundation for the admission of the subsequent "corroborating" hearsay testimony was therefore never established.

The trial judge also allowed the document into evidence under the prior consistent statement exception to the hearsay rule. " 'The general rule is that a witness' prior consistent statements are inadmissible at trial. *Thomas* v. *Ganezer,* [137 Conn. 415, 417, 78 A.2d 539 (1951)]; annot., 75 A.L.R.2d 909, 918. Such statements clearly are barred by the hearsay rule if sought to be used to prove the truth of the matters asserted therein; see, e.g., 2 Wharton, Criminal Evidence (13th Ed.) § 500, p. 485 ("its sole purpose is to rehabilitate an impeached witness"); 4 Wigmore Evidence (Chadbourn Rev.) § 1132, p. 294; also, they generally are prohibited even when offered for the limited purpose of rehabilitating of the witness' damaged credibility. See *United States* v. *Quinto,* 582 F.2d 224, 232 (2d Cir. 1978) and authority cited therein. The rationale upon which this rule is based is that the witness' story "is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial; and is rejected in all Courts." 4 Wigmore, Evidence (3d Ed.) § 1124, pp. 194–95; *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 315–16, 268 A.2d

639 (1970); see also 2 Wharton, Criminal Evidence (13th Ed.) § 500, p. 484 . . . . ' *State* v. *Dolphin,* 178 Conn. 564, 568–69, 424 A.2d 266 (1979) . . . .

"There are certain exceptions to this general rule. Major exceptions to the general rule include using the prior consistent statement to rehabilitate a witness who has been impeached: . . . by a suggestion of recent contrivance. *State* v. *Dolphin,* supra, 568 n.5; 4 Wigmore, supra, §§ 1129, 1130 . . . ." (Emphasis added.) *State* v. *Brown,* 187 Conn. 602, 607–609, 447 A.2d 734 (1982).

The situation with which we are faced is slightly different from the usual use of the prior consistent statement. In this case, there was impeachment of the complainant's testimony, but it came about through impeaching the detective to whom the complainant made her statement.

During his cross-examination of the detective, defense counsel asked if the complainant indicated to the detective that the incident lasted for two hours. When the witness replied in the affirmative, defense counsel asked if this information was in the complainant's statement. After examining the complainant's statement, the detective replied that it was not. The logical inference to be drawn from this questioning is that the information is not accurate or that the complainant's statement had been embellished since having been made. See *State* v. *Englehart,* 158 Conn. 117, 121, 256 A.2d 231 (1969).

In spite of the third party used in this case to impeach the complainant's version of the facts, we find that the policy reasons for admitting a prior consistent statement are present in this case: i.e., the superior trustworthiness of the earlier statement, the freshness of memory at the time the statement was made and the lack of time to fabricate the original version of facts.

See C. McCormick, Evidence (3d Ed.) § 251, pp. 744–46. The prior consistent statement in this case was introduced to show that the written statement made to the detective by the complainant was not recently fabricated, and that the testimony was consistent with the statement.

Other states have expanded the traditional prior consistent statement rule to include the offering of a prior consistent statement by another witness. See *United States* v. *Rodriguez,* 452 F.2d 1146 (9th Cir. 1972); *People* v. *Mirenda,* 23 N.Y.2d 439, 297 N.Y.S.2d 532, 245 N.E.2d 194 (1969). The prior consistent statement of the complainant in this case was properly admitted to rehabilitate her after the detective's testimony had been called into question. See *State* v. *McCarthy,* 179 Conn. 1, 18–19, 425 A.2d 924 (1979).

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.