MEMORANDUM OF DECISION ON MOTIONS TO SUPPRESS
The respondent was arrested on December 24, 1996 for violation of General Statutes § 53-203 for unlawful discharge of a firearm, General Statutes § 53a-181 for breach of the peace and General Statutes § 53a-63 for reckless endangerment in the first degree.
On May 20, 1997, he filed a motion to suppress all admissions, confessions or statements written and oral, made to the police or other Juvenile Court officials in the case. The grounds of the motion were that such statements were obtained in violation of the respondent's rights provided by (a) the fourth,fifth and sixth amendments to the United States constitution, (b) article first, § 8, of the Connecticut constitution and (c) General Statutes § 46b-137 because these statements were made without counsel present, without the respondent's parents being present and without advising him of his constitutional rights. In addition, the respondent filed a motion to suppress all items seized in the search of the premises located on Maple Street, Danielson, Connecticut, on the ground that the search violated the respondent's rights provided by (a) the fourth andfourteenth amendments to the United States constitution and (b) article first, § 7, of the Connecticut constitution because it was conducted without a warrant.[2] The respondent filed a brief in support of his motion to suppress the evidence on June 27, 1997.
On or about July 28, 1997, the state filed a reply brief, claiming the search was justified by either (1) exigent circumstances or (2) the emergency doctrine exception to the warrant requirement.
A hearing was held on this matter on July 29, 1997, September CT Page 781 29, 1997 and October 20, 1997.
FACTS
The court finds the following facts. On December 24, 1996, at approximately 3:00 p. m., trooper Eric Dency of the state police, responded to a radio call that gunshots were being fired in the area of Maple and Harry Streets in Danielson, Connecticut. Dency went to the area where he patrolled listening for shots. He met Dennis Page, who lived on Harry Street. Page reported to Dency that he had heard several shots, went outside to investigate and through his binoculars saw additional shots being fired and a glint of chrome from an upstairs window on the north side of the respondent's house. After obtaining Page's statement, Dency pulled in the driveway of the respondent's house on Maple Street. Dency then radioed his information to headquarters. Troopers Murray, Fillmore, and Thomson and Sgt. Hogarty arrived. Dency was unsure if any one was in the house. Dency observed what he thought were gunshot shell casings on the ground on the northwest side of the house. As Dency and Hogarty approached the house, the respondent, a twelve-year-old, and his 15-year-old brother came to the door. The boys said no adults were present. The police asked the respondent and his brother who was shooting outside the window. Both boys acted very nervous and said no one was shooting. Dency believed the boys were not being truthful and there was a gun inside the house. The officers decided to enter the house to find the gun and any person who might have it, to ensure the safety of the boys, the officers and the community. Dency, Hogarty and Murray went in the house without asking permission of the boys. Dency drew his weapon upon entering. Dency stepped into the family room and found another twelve-year-old boy in there. Upon questioning, this boy said he had no knowledge of a weapon. Hogarty checked the boys for weapons. Dency went up the stairs followed by the respondent and Murray. Dency and Murray "cleared" the two bedrooms on the second floor to check for other individuals and concluded no one else was present. Dency believed the shots came from the boys' bedroom, for the window in that room corresponded to the window identified by Page. Dency and Murray did an extensive search of that bedroom. Dency observed a .22 caliber bullet on the floor of the boys' bedroom. Dency also saw a bag in the closet that contained a long shape, similar to the .22 caliber ammunition seen on the floor. Dency reached inside the bag and took out a long rifle cartridge. Dency told the respondent that several witnesses had seen the respondent shooting out the window. Dency asked the CT Page 782 respondent who the ammunition belonged to and whether there was a gun in the room. After being asked a second time about a gun, the respondent told Dency where the gun was. As Dency walked down the cellar stairs to tell Hogarty about the gun, he observed Hogarty and the respondent's brother in the cellar. The respondent's brother retrieved a handgun, a Jennings .22 caliber and gave it to Hogarty. Dency was given the gun from Hogarty. At that point, the officers arrested the three boys. The officers then stopped the search of the interior of the house and searched around the perimeter of the house where Dency had earlier observed the shell casings. Dency seized the shell casings that were on the ground outside.
The respondent was not given his Miranda rights nor was he told he had the right to have a parent or guardian present when he was answering the officers' questions. None of boys gave the officers permission to search the premises.
DISCUSSION
A. Motion to Suppress the Statements
The respondent moves to suppress all the statements he made to the officers or juvenile court officials on the ground that the statements were made without counsel present, without his parents being present and without advising him of his constitutional rights. General Statutes § 46b-137 (a) provides "[a]ny admission, confession or statement, written or oral, by a child to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent . . . and after the parent . . . and child have been advised (1) of the child's right to retain counsel, . . . (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."
The court finds General Statutes § 46b-137 (a) prohibits the state from using any statement, admission or confession made by the respondent to the officers or juvenile court officials. Thus, the motion to suppress statements the respondent made to the police officers and any juvenile court official is granted.
B. Motion to Suppress the Tangible Evidence
CT Page 783
"It is a fundamental principle of search and seizure law that, in the absence of exigent circumstances and probable cause for arrest, a person's house may not be entered without a warrant, and that warrantless searches and seizures inside a house are presumptively unreasonable. Payton v. New York,445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v.Guertin, 190 Conn. 440, 446, 461 A.2d 963 (1983)." State v. Gant,231 Conn. 43, 63, 646 A.2d 835 (1994), cert. denied,514 U.S. 1038, 115 S.Ct. 1404, 131 L.Ed.2d 291 (1995). The burden of showing that an exception to the warrant requirement exists is on the state. State v. Harris, 10 Conn. App. 217, 224, 522 A.2d 323
(1987). "Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed." (Internal quotation marks omitted.)State v. Gant, supra, 63. "The term, `exigent circumstances,' does not lend itself to a precise definition but generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." (Internal quotation marks omitted.) Id., 63-64. "Some element of emergency must exist which would render a search ineffective if delayed by the time necessary to get a warrant." (Internal quotation marks omitted.) State v. Bernier, 46 Conn. App. 350, 367, ___ A.2d ___ (1997). The three general categories the United States Supreme Court "has identified as emergency situations are those involving (1) danger to human life, (2) destruction of evidence and (3) flight of a suspect." State v. Guertin, supra, 190 Conn. 448.
In this matter, the officers had sufficient facts to justify a belief of a reasonable person that an offense had been committed. Reports of gunfire shots had been made to headquarters. A credible neighbor had heard the gunshots and seen flashes of gunfire from a second floor window of the respondent's house. There were shell casings on the ground outside the house below the window identified by the neighbor. The court finds that the officers had probable cause to proceed to the door of the house to inquire about the shooting. Two young boys came to the door, claiming that no adults were present and denying any knowledge of a shooting. The officers found the boys to be nervous and suspicious. The court finds there were exigent circumstances, based on danger to human life, that justified the CT Page 784 immediate search for the gun and any individuals who might be hiding in the house with the gun. See Arizona v. Hicks,480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), a case in which the police entered the respondent's apartment, from which a bullet had been fired through the floor, to search for the shooter, victims and weapons. "It was conceded that the initial entry and search, although warrantless, were justified by the exigent circumstances of the shooting." Id., 324. In UnitedStates v. Antwine, 873 F.2d 1144, 1147 (8th Cir. 1989), the defendant had come to the door with a handgun. He then went back inside. Eventually, he was arrested in the yard outside. The officers then went in the house where an eleven-year-old boy and a young girl were to seize the gun. The court affirmed the warrantless search based on exigent circumstances created by the presence of the gun in the house with the children. In State v.Gant, supra, 231 Conn. 66-67, the court found exigent circumstances existed for a warrantless search of a gun in part because children were located in the apartment where a murder suspect, who had used a gun, was hiding. "The combination of guns and children can be fatal." Id., 68. Compare State v. Harris, supra, 10 Conn. App. 229, in which the attempted sexual assault victim brought the police to the defendant's bedroom after the assault had taken place. The court found that the warrantless search of the bedroom when the officers knew the defendant was not present was for convenience and the desire to secure evidence helpful for conviction. "[T]he state failed to establish the prerequisite compelling necessity for immediate action." (Citation omitted internal quotation marks omitted.) Id., 228.
The court finds that because of exigent circumstances, which did not end until the gun was located and secured, the warrantless search of the respondent's house did not violate the respondent's right against unlawful searches and seizures provided by both the United States and Connecticut constitutions.
Thus, the motion to suppress the tangible evidence obtain, from the respondent's house is denied.
Peck, J.