STATE OF CONNECTICUT *v.* PATRICK ENRIGHT, JR.
(6578)

O'CONNELL, STOUGHTON and NORCOTT, Js.

Argued October 18—decision released December 6, 1988

*Andrew B. Bowman,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Knight* and *Richard F. Jacobson,* assistant state's attorneys, for the appellee (state).

NORCOTT, J. The defendant was arrested on October 24, 1986, at a college party at his residence in Fairfield after the police witnessed a drug sale in the hallway of the residence. Prior to trial, the defendant filed a motion to suppress any statements and all tangible evidence obtained from his person and his home after a warrantless entry by the police. The trial court denied the motion, finding that the entry was justified by exigent circumstances. We find no error.

On September 23, 1987, the defendant entered a conditional plea of nolo contendere under General Statutes § 54-94a[1] to a substitute information charging him

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

with one count of the sale of cocaine and one count of possession with intent to sell cocaine, in violation of General Statutes § 21a-277 (a), and with one count of possession of marihuana in violation of General Statutes § 21a-279 (c). The defendant appeals from the judgment of conviction.

On appeal, the defendant claims that the trial court erred in refusing to suppress evidence obtained as a result of the warrantless entry of his residence. He contends that the warrantless, nonconsensual entry into the private dwelling at 531 Fairfield Beach Road violated his right to be free from unreasonable searches and seizures guarantied by the fourth amendment to the constitution of the United States[2] and by article first, § 7, of the Connecticut constitution.[3]

From the evidence revealed at the suppression hearing, the court reasonably could have found the following facts. On October 24, 1986, the defendant was one of seven people sharing and paying rent for a house located at 531 Fairfield Beach Road. On that date, Jean McEldowney and her husband owned and lived in an adjoining house located at 519 Fairfield Beach Road. During the evening of October 24, 1986, a large party was taking place at the defendant's home. Jean McEldowney telephoned the Fairfield police to complain about certain activities taking place within the defendant's home. McEldowney told the police that from her living room window she had an unobstructed view into one of the

---

[2] The fourth amendment to the United States constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . . " This constitutional right is made applicable to the states through the fourteenth amendment to the United States constitution. *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[3] Article first, § 7, of the Connecticut constitution provides in pertinent part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . . "

bedrooms and that she had observed three females inhaling a white powdery substance set out on a mirror. The McEldowneys concluded that the white powdery substance was cocaine. The couple continued to observe the individuals in the bedroom for about ten minutes until the police arrived at their home.

Sergeant Thomas Mrozek of the Fairfield police arrived at about 11:30 p.m., and, from the same unobstructed vantage point in the McEldowneys' living room, observed five females gathered around a mirror. Mrozek testified that he observed one female arrange a white powdery substance into short white lines on the mirror and then observed each female take a turn inhaling the powder through a short straw. Mrozek, a nine year veteran of the police force with experience in the investigation of drug related cases, concluded that the females were inhaling cocaine. He radioed for assistance and continued to observe the females for a short period until Officers Michael Pomarico and Collin Ruane of the Fairfield police department arrived and met him in the driveway of the McEldowney home. All three officers were in uniform. Pomarico testified that from the driveway he had observed several females in the bedroom pointed out by Mrozek.

The three officers went to the back porch of the defendant's home where they found both the screen door and the main door open. Fifty to seventy people were freely coming and going, in and around the house. On the back porch, Mrozek asked a group of people where the owners or renters of the dwelling were and if the police might come in. No one in the group responded and they all dispersed. The police then entered the house and immediately encountered a second group. The police addressed the same questions to this group with the same results.

The officers then proceeded to the stairway, climbed to the second floor, and headed for the bedroom where the females had been observed inhaling cocaine. As Mrozek approached the open bedroom door, he observed the defendant and another male facing each other just inside the bedroom. Mrozek testified that he saw the two exchange cash for an envelope and believed that he had just observed a drug transaction. He approached the purchaser and touched the man's left hand. The man turned his hand over and revealed a small white envelope of the type commonly used to package cocaine. After observing the contents of the envelope, Mrozek ordered Pomarico to arrest the purchaser. Mrozek arrested the defendant and, incident to this arrest, seized cash and checks totalling $365 and other packets of white powder. The powder later tested positive as cocaine.

Only one of the five females originally observed by Mrozek remained in the bedroom. The police found the mirror under the bed and seized it along with a straw and a razor blade. No powder remained on the mirror. None of the females were arrested.

At the suppression hearing, Kevin Coghlan, a cotenant of the house, testified that when he approached the premises after the police had arrived, he found the screen door closed. He also testified that unidentified police officers pushed him aside and ignored his protest against their intrusion.

The dispositive issue of this appeal is whether the trial court erred in concluding, on the basis of the evidence adduced at the suppression hearing, that the warrantless entry into the defendant's home was justified by exigent circumstances. It is the function of this court to determine whether the trial court's decision was clearly erroneous in light of the evidence in the whole record. Practice Book § 4061; *State* v. *Reagan,* 209

Conn. 1, 8, 546 A.2d 839 (1988). After a careful review of the record, we conclude that the trial court did not err.

Both the state and federal constitutions " 'equally and co-jointly prohibit unreasonable warrantless searches of private property. . . .' " *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984), quoting *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978); *State* v. *Harris,* 10 Conn. App. 217, 224, 522 A.2d 323 (1987).[4] Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton* v. *New York,* 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). " 'Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant. *Steagald* v. *United States,* 451 U.S. 204 [101 S. Ct. 1642, 68 L. Ed. 2d 38] (1981); *Payton* v. *New York,* [supra]; *Johnson* v. *United States,* 333 U.S. 10 [68 S. Ct. 367, 92 L. Ed. 436] (1948).' *Donovan* v. *Dewey,* 452 U.S. 594, 598 n.6, 101 S. Ct. 2535, 69 L. Ed. 2d 262 (1981)." *State* v. *Reagan,* supra. The burden is on the state to show that an exception exists. *State* v. *Harris,* supra.

---

[4] The defendant claims violations of both the federal and state constitutions, although he states that each provides the same protections. In fact, however, the reasonableness standard applied to warrantless searches and seizures may be stricter under the state constitution than the standard for searches and seizures applied under the federal constitution. See *Cooper* v. *California,* 386 U.S. 58, 62, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967); *State* v. *Dukes,* 209 Conn. 98, 104–105, 547 A.2d 10 (1988) (extent of search incident to custodial arrest for motor vehicle offense); *State* v. *Kimbro,* 197 Conn. 219, 235, 496 A.2d 498 (1985) (existence of probable cause for search incident to warrantless arrest). See also *State* v. *Brown,* 14 Conn. App. 605, 628 n.8, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). Because the defendant offers no separate analysis of whether a stricter state search and seizure standard should apply to the facts of this case, we decline to undertake such analysis. See *State* v. *Camerone,* 8 Conn. App. 317, 321 n.1, 513 A.2d 718 (1986).

The question of what constitutes exigent circumstances justifying a warrantless entry of a private dwelling has been a difficult one for both the police and the courts. The term "exigent circumstances" generally refers to "those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978); *State* v. *Harris,* supra, 227. We have recently noted that "[t]he parameters of exigent circumstances are neither so well defined nor so sharply delineated that the phrase may be regarded as a free port of entry for all purposes." *State* v. *Guertin,* 190 Conn. 440, 447, 461 A.2d 963 (1983); *State* v. *Harris,* supra. The question in the present case is whether the trial court erred in finding that the state proved the existence of exigent circumstances justifying a warrantless entry into the private residence.

Our Supreme Court has already struggled with the formulation of a test for determining whether a given set of circumstances is exigent. In *State* v. *Guertin,* supra, 453, the court adopted the following rule as articulated in *State* v. *Canby,* 252 S.E.2d 164, 167 (W. Va. 1979): " 'The test of exigent circumstances for the making of an arrest for a felony without a warrant . . . is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test; its preeminent criterion is what a *reasonable,* well-trained police officer would believe, not what the arresting officer actually did believe.' (Footnote omitted, emphasis in original.)"

The defendant contends that on the evening of October 24, 1986, the Fairfield police officers were not faced with circumstances that could be regarded as sufficiently exigent to justify the warrantless entry into his home. We disagree.

The police acted swiftly in an attempt to reach the perpetrators of the felony that they had witnessed in order to effect an arrest and secure evidence before the perpetrators and the evidence disappeared. The fact that their basic concerns were realized, namely, that by the time they reached the bedroom, all but one of the females were gone, as was the cocaine they had seen, does not invalidate the officers' reasonable belief in the need to act quickly. Indeed, the opposite is true. The defendant's contention that the warrantless entry was futile because there was no reasonable likelihood that any cocaine would remain by the time the police arrived at the bedroom is specious and undermines the rationale of the exigent circumstances doctrine.

Applying the so-called *Canby* rule to the facts of this case, we conclude that under the totality of the circumstances the police had reasonable grounds to believe that if an immediate arrest were not made, the evidence would have been completely consumed and the perpetrators would have left the premises.

We further note that the police action was not a fishing expedition, a pretextual "police created exigency" as condemned in *State* v. *Canby,* supra, 167, or a "planned arrest" which has been repeatedly proscribed by the United States Supreme Court. See *Steagald* v. *United States,* supra; *Payton* v. *New York,* supra; 2 W. LaFave, Search and Seizure (2d Ed., 1987), 6.1 (f).

Because exigent circumstances were present and thus the warrantless entry was valid, the police were lawfully inside the residence when they arrested the defendant after viewing the drug transaction in the bed-

room. Therefore, the defendant's contention that the invalidity of the original entry required the trial court to suppress the evidence obtained from the defendant as a result of this entry is without merit.

The defendant also contends that the warrantless entry was nonconsensual and therefore illegal. Because our decision on the issue of exigent circumstances is dispositive of the appeal, we need not reach this claim. See *Payne* v. *Robinson,* 10 Conn. App. 395, 404, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, U.S. , 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988).

There is no error.

In this opinion the other judges concurred.