STATE OF CONNECTICUT *v.* EDWARD L. REAGAN
(4774)

DUPONT, C. J., BORDEN and DALY, Js.

Argued November 15, 1988—decision released March 28, 1989

*M. Hatcher Norris,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *Susan Marks,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was convicted, following his conditional pleas of nolo contendere,[1] of the crimes of sale of a narcotic substance in violation of General Statutes § 21a-277 (a) and illegal possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-279a (a). He appealed, claiming the trial court erred in denying his motion to suppress evidence obtained as a result of an illegal search and arrest. The trial court, in denying the defendant's motion to suppress, found that the warrantless entry and subsequent arrest were justified by exigent circumstances.

On appeal, we affirmed the trial court's denial of the defendant's motion to suppress, not on the basis of exigent circumstances, but on the ground that the warrantless entry of the defendant's home was justified by consent. *State* v. *Reagan,* 11 Conn. App. 540, 528

[1] The defendant entered his plea pursuant to General Statutes § 54-94a which provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution." See also Practice Book § 4003 (a).

A.2d 846 (1987), rev'd, 209 Conn. 1, 546 A.2d 839 (1988). Our Supreme Court reversed, concluding that the record was insufficient to warrant a finding of consent by this court. *State* v. *Reagan,* 209 Conn. 1, 546 A.2d 839 (1988). Accordingly, the case was remanded to this court "for a determination of whether the trial court erred in finding the existence of exigent circumstances to justify the warrantless entry into the defendant's home and his subsequent arrest." Id., 15.

The facts relevant to the issue presented on remand are as follows: On May 24, 1985, the Connecticut state police began a surveillance of the defendant's home in Lakeville. This action was instituted on the basis of information provided by a neighbor of the defendant. On that date, two officers observed what appeared to them to be a drug deal occurring between the defendant and David Earl Jones. Before the officers left their position outside the defendant's house, a woman arrived in a car, went into the defendant's house and left after less than one minute.

The officers contacted their superior, Sergeant Brian Acker, who was in a car parked at the corner of Pettee Street and Route 44, and informed him of what they had observed. Subsequently, Jones drove past Acker, pulled into a gas station and began conversing with an individual. Apprehensive that Jones would transfer or destroy suspected narcotics, Acker and Detective James Caputo conducted a stop and search of Jones' car at the gas station. After finding marihuana in his vehicle and one-half gram of cocaine in a cigarette pack, the officers arrested Jones.

During this search and arrest, the individual with whom Jones had been conversing was standing near Jones, and several others were watching from a distance of approximately ten feet. There also was testimony indicating that the officers at the scene noticed

that the woman who had earlier been observed entering and leaving the defendant's house was watching the proceedings from the corner.[2]

After the arrest of Jones, application for a search warrant was made. Acker testified at the hearing on the motion to suppress that he believed it would take at least three hours to obtain the warrant and decided that a significant risk existed that the defendant would learn of Jones' arrest and destroy any incriminating evidence. Acker concluded that it was necessary to enter and secure the defendant's residence until a warrant could be issued.

The details of the manner in which the officers entered the defendant's home, which are set forth in our prior opinion, relate to the issue of consent and are not relevant to the question on remand. After Acker and Trooper John Merullo entered the defendant's home, they saw the defendant in a bedroom and observed a bowl containing a white powdery substance on a nearby table. Acker told the defendant not to move and informed him that he was under arrest. The other occupants of the house were ordered to the first floor, while the officers waited for the search warrant. When the warrant arrived, a search was conducted, and cash, the white substance and drug paraphernalia were seized.

---

[2] In our prior opinion in this case, we stated that Sergeant Acker testified that "he also noticed the woman whose car he had seen at the defendant's home, stopped at the corner, watching the proceedings." The testimony, however, is not quite that clear. The testimony concerning the woman seen at the defendant's home is essentially as follows: A surveilling officer testified that after observing Jones at the defendant's home, and contacting Acker by radio, another car pulled up and a young woman entered the defendant's house and left after one minute. Acker testified that while at the gas station conducting the arrest of Jones he received a radio communication. He then stated that, following the radio communication, he observed a woman in a small red car stopped at the stop sign at the corner of the defendant's one-way street, observing the proceedings.

The defendant moved to suppress all evidence obtained during the search as the fruit of an illegal search and arrest. During the hearing on the motion to suppress, the trial court heard the testimony of the surveilling officers who described their specialized training and experience in narcotics investigation. They testified that a drug dealer, after learning that a customer has been arrested, commonly destroys any contraband by scattering it, dissolving it, or flushing it down the toilet. Acker then testified and corroborated the testimony of the surveilling officers concerning the practice of destroying contraband. He further testified that the presence of several people observing the arrest of Jones at the gas station, including the woman seen shortly before at the defendant's home, led him to conclude, based on his knowledge of the community and the time of day, that the defendant would be informed of the arrest and destroy any contraband before a warrant could be obtained.

The trial court denied the motion to suppress, finding that the warrantless entry was justified by exigent circumstances. The trial court noted the small size of the town, the fact that the arrest of Jones occurred in close proximity to the defendant's house and the fact that the arrest was observed by several people.

The sole issue presented on remand is whether the trial court erred in concluding that the warrantless entry into the defendant's home and his subsequent arrest were justified by the existence of exigent circumstances. "It is the function of this court to determine whether the trial court's decision was clearly erroneous in light of the evidence in the whole record." *State* v. *Enright,* 17 Conn. App. 142, 146, 550 A.2d 1095 (1988). We conclude that the trial court did not err.

"Both the state and federal constitutions ' "equally and co-jointly prohibit unreasonable warrantless

searches of private property . . . . " ' *State* v. *Zindros*, 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984), quoting *Dotson* v. *Warden*, 175 Conn. 614, 618, 402 A.2d 790 (1978)." *State* v. *Enright*, supra, 147. " 'It is a "basic principle of Fourth Amendment law" that searches and seizures inside a home without a warrant are presumptively unreasonable.' *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)." *State* v. *Guertin*, 190 Conn. 440, 446, 461 A.2d 963 (1983). The two recognized exceptions to the warrant requirement are searches undertaken pursuant to exigent circumstances or consent. *State* v. *Harris*, 10 Conn. App. 217, 223, 522 A.2d 323 (1987). The burden of showing that an exception to the warrant requirement exists is on the state. Id., 224.

" 'The phrase "exigent circumstances" refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization.' *United States* v. *Campbell*, 581 F.2d 22, 25 (2d Cir. 1978)." *State* v. *Guertin*, supra, 447. The three general categories of circumstances identified as exigent are those involving (1) danger to human life, (2) destruction of evidence and (3) flight of a suspect. Id., 448.

In *State* v. *Guertin*, supra, 453, our Supreme Court adopted the following rule, as articulated in *State* v. *Canby*, 252 S.E.2d 164, 167 (W. Va. 1979): " 'The test of exigent circumstances for the making of an arrest for a felony without a warrant . . . is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger

the safety or property of others. This is an objective test; its preeminent criterion is what a *reasonable,* well-trained police officer would believe, not what the arresting officer actually did believe.' (Footnote omitted, emphasis in original.)''

The defendant contends that on the date of his arrest, the police were not faced with exigent circumstances sufficient to justify the warrantless entry into his home. We disagree.

It has been recognized that the possiblity that a suspect knows or may learn that he is under surveillance or at risk of immediate apprehension may constitute exigent circumstances, on the theory that the suspect is more likely to destroy evidence, to attempt to escape or to engage in armed resistance. *United States* v. *Edwards,* 602 F.2d 458 (1st Cir. 1979); *United States* v. *Bustamante-Gamez,* 488 F.2d 4 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S. Ct. 1933, 40 L. Ed. 2d 559 (1974); *United States* v. *Rubin,* 474 F.2d 262 (3rd Cir.), cert. denied sub nom. *Agran* v. *United States,* 414 U.S. 833, 94 S. Ct. 173, 38 L. Ed. 2d 68 (1973).

Federal courts have held that exigent circumstances may exist where police reasonably believe that a defendant may be alerted to the imminence of arrest by the detention or arrest of a confederate and destroy incriminating evidence. See, e.g., *United States* v. *Hicks,* 752 F.2d 379 (9th Cir. 1985); *United States* v. *Chase,* 692 F.2d 69 (9th Cir. 1982); *United States* v. *Rubin,* supra.

In *United States* v. *Chase,* supra, police stopped and detained a woman seen leaving the home of the defendant, a suspected narcotics dealer. During the detention, an individual, who identified himself as the woman's attorney, stopped at the detention site, inquired whether everything was ''OK,'' and left. After the man left the detention site, the officers concluded that the

defendant would be notified of the detention before they could obtain a search warrant for the defendant's home. The court concluded that, given the detention of the woman seen leaving the defendant's home, and the observation of that detention by the individual claiming to be her attorney, the belief of the police that the defendant would learn of the detention before a search warrant was issued was reasonable.

Similarly, in the present case, police detained and arrested an individual seen leaving the defendant's home. The arrest site was located on the corner of the defendant's street, approximately one quarter of a mile from the defendant's home. Several people observed this arrest, one of whom was seen by police conversing with Jones. In addition, there was testimony indicating that the arrest was observed by a woman seen by police at the defendant's home. Given the small size of the town, the proximity of the arrest to the defendant's home and the observation of that arrest by several people, we conclude that police had reasonable grounds to believe that if an immediate entry into the defendant's home were not made, the defendant would be alerted to the arrest of Jones and destroy any incriminating evidence.

We note that the arrest of Jones at the gas station was not a "police created exigency," as condemned by *State* v. *Canby,* supra. Testimony indicated that the police did not plan on arresting Jones in such close proximity to the defendant's home, but instead planned on following him to a more remote location. Jones' unexpected stop at the gas station and his conversation with an individual there, caused the police to be apprehensive that Jones would transfer the suspected narcotics and forced them to alter their original plan.

Because exigent circumstances were present, the police were legally inside the residence when they

arrested the defendant. Therefore, the defendant's contention that the invalidity of the original entry required the trial court to suppress evidence obtained as a result of the entry and subsequent arrest is without merit. See *State* v. *Enright,* supra, 149–50.

There is no error.

In this opinion the other judges concurred.