## STATE OF CONNECTICUT *v.* JAMES KLAUSS
### (7433)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued May 10—decision released August 8, 1989

*Edward E. Moukawsher,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *Lawrence J. Tytla,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from a judgment of conviction following a conditional plea of nolo contendere, entered pursuant to General Statutes § 54-94a, to a substitute information charging him with one count of possession of marihuana in violation of General Statutes § 21a-279c.

On September 28, 1987, the city of Groton police received information that the defendant was intoxicated, armed with a gun and possibly suicidal. Responding to the call, the police entered his home without a warrant and, while searching for him in his bedroom, discovered marihuana and drug paraphernalia. They later arrested the defendant on charges of possession and cultivation of marihuana and possession of drug paraphernalia.

Prior to trial, the defendant filed a motion to suppress all tangible evidence taken from his premises pursuant to the warrantless entry. The trial court denied the motion on the ground that the entry of the defendant's home was justified under the emergency exception to the warrant requirement. Thereafter, the defendant entered his conditional plea.

The defendant's claim on appeal is that the trial court erred in holding that the warrantless, nonconsensual search of his home did not violate the federal and state constitutional guarantees against unreasonable searches and seizures.[1] We find no error.

From the evidence adduced at the suppression hearing, the court could reasonably have found the following facts. On September 28, 1987, the defendant's girl friend, Carol Oliver, who was hospitalized at the time, had several telephone conversations with the defendant during the afternoon and evening. The parties argued about the breakup of their relationship, and

---

[1] The federal and state constitutions both prohibit unreasonable warrantless searches of private property. *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984); *State* v. *Enright,* 17 Conn. App. 142, 147, 550 A.2d 1095 (1988). The defendant claims violations of both the federal and state constitutions. Because he has not offered a separate analysis of the state constitutional claim, however, we will not review it. *State* v. *Magnano,* 204 Conn. 259, 265 n.4, 528 A.2d 760 (1987); *State* v. *Enright,* supra, 147 n.4.

Oliver believed that, besides being angry and upset, the defendant was becoming increasingly intoxicated and might do harm to himself. She also believed that she heard the sound of a gun during one of their conversations. Oliver conveyed her concern about the defendant to some friends visiting her at the hospital. Later, she contacted her brother and the defendant's brother, asking each to check on the defendant. The friends at the hospital spoke to a security guard who in turn contacted the Groton police.

On the basis of the information received from the hospital security guard, the Groton police dispatcher issued a radio transmission concerning a possible suicide attempt involving weapons at the defendant's home. Detective Martin Viscione and Officer Dale Grenstiner proceeded to the defendant's home, a duplex located at 70 Godfrey Street, where they cleared the area and barricaded the street with police vehicles.

In the interim, the police dispatcher had spoken to Oliver and learned that the defendant, whom Oliver identified as James Klauss, had reason to be very depressed, was intoxicated and possessed either a shotgun or a small handgun and that Oliver had heard two shots fired. On the basis of that conversation, the dispatcher issued a second transmission indicating that shots had been fired and that the person in need of assistance had been identified as James Klauss. Grenstiner and Viscione received that information and requested the presence of Police Chief Robert Laurie on the scene. After Laurie arrived, the police made the decision to enter the house.

Before the police entered, however, the defendant's housemates, Holly Retta and Arthur Geyer, arrived at the police barricade. They were followed by the defendant's brother and Oliver's brother. The housemates identified themselves to the police and indicated that

they and the defendant shared the rent for the left side of the duplex. They informed the police that they had unsuccessfully tried to prevent the defendant from leaving the house, that they had left the house to find him, and that they believed that the defendant was not in the house. They stated that guns were present in the house, and that although they had heard the pump action of the defendant's shotgun, no shots had been fired. Retta gave the police a description of the defendant's car, which was not in the driveway or in front of the duplex.

The police obtained the key to the house from Retta but, after unsuccessfully attempting to open the door with the key, they entered by breaking a windowpane in the door and reaching in to unlock it. The police then made a cautious search of the premises for the defendant. The search included the defendant's bedroom, considered by his housemates to be his private room. Although they did not find the defendant, the police discovered in plain view the drug paraphernalia and marihuana that they seized. Shortly after the police entry, police officers from the town of Stonington discovered the defendant's car parked in that town and notified the Groton police.

The defendant contends that under these facts the police conducted an impermissible warrantless entry into his home, and that, accordingly, the trial court should have suppressed the evidence seized pursuant to that impermissible entry. We disagree.

"Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). ' "Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant. *Steagald* v. *United States*, 451 U.S. 204 [101 S. Ct. 1642, 68 L. Ed. 2d 38] (1981);

*Payton* v. *New York,* [supra]; *Johnson* v. *United States,* 333 U.S. 10 [68 S. Ct. 367, 92 L. Ed. 436] (1948)." *Donovan* v. *Dewey,* 452 U.S. 594, 598 n.6, 101 S. Ct. 2535, 69 L. Ed. 2d 262 (1981).' *State* v. *Reagan,* [209 Conn. 1, 8, 546 A.2d 839 (1988)]. The burden is on the state to show that an exception exists. *State* v. *Harris,* [10 Conn. App. 217, 224, 522 A.2d 323 (1987)]." *State* v. *Enright,* 17 Conn. App. 142, 147, 550 A.2d 1095 (1988).

The terms "exigent circumstances" and "emergency doctrine" are often used interchangeably when discussing warrantless entries into a home. The term "exigent circumstances," however, generally refers to " 'those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization.' *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978)." *State* v. *Guertin,* 190 Conn. 440, 447, 461 A.2d 963 (1983); *State* v. *Reagan,* 18 Conn. App. 32, 556 A.2d 183 (1989); *State* v. *Harris,* supra, 227. The "emergency" exception refers to another type of warrantless entry that evolves outside the context of a criminal investigation and does not involve probable cause as a prerequisite for the making of an arrest or the search for and seizure of evidence. The present case is of the latter type.

This second type of warrantless entry was recognized by the United States Supreme Court in *Mincey* v. *Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and adopted by the Connecticut Supreme Court in *State* v. *Magnano,* 204 Conn. 259, 528 A.2d 760 (1987). "In *Mincey* v. *Arizona,* [437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)], the United States Supreme Court recognized the exigency or emergency exception to the warrant requirement. The court held that the fourth amendment does not bar police officers,

when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that a person within is in need of immediate aid. Id., 392–93." *State* v. *Magnano,* supra, 266.

Our Supreme Court has defined the standard for determining what constitutes exigent circumstances allowing warrantless entries for arrests, searches and seizures based on probable cause of criminal activity. In *State* v. *Guertin,* supra, 453, the court adopted the so-called *"Canby* rule" which requires that, under the totality of the given circumstances, a police officer has reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. The test is an objective one. " '[I]ts preeminent criterion is what a *reasonable,* well-trained police officer would believe, not what the arresting officer actually did believe.' " (Emphasis in original.) Id., quoting *State* v. *Canby,* 252 S.E.2d 164, 167 (W. Va. 1979); *State* v. *Enright,* supra, 148.

The present case raises the question of what test is to be employed in determining the reasonableness of the police officer's belief that a person within the home is in need of immediate aid—the situation in which that officer is faced with an emergency not involving a need for an immediate arrest or a search for evidence. We conclude that this test should be no less stringent than that adopted in *Guertin.*

In reaching this conclusion, we note that there is a significant difference between a police entry for the purpose of making an arrest or searching for evidence incident to a criminal investigation and an entry for the purpose of rendering aid or saving a human life.

Although probable cause is the standard by which we judge the former situation, reasonable belief determines the latter. *Mincey* v. *Arizona,* supra, 392; *State* v. *Magnano,* supra. Although it is desirable to encourage the police to make valid emergency entries into homes to protect lives, we cannot ignore the fourth amendment's protections against unreasonable searches and seizures. "Physical entry of the home is the chief evil against which the wording of the fourth amendment is directed." *State* v. *Guertin,* supra, 447, citing *Warden* v. *Hayden,* 387 U.S. 294, 301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967). Any valid entry into a home conceivably brings the "plain view" doctrine of seizure of evidence into play. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State* v. *Ruth,* 181 Conn. 187, 193, 435 A.2d 3 (1980). It is imperative, therefore, that the test for the police officer's belief that an emergency does in fact exist, a belief that constitutes the officer's ticket of entry into the home, be at least as stringent as the objective test required for a warrantless entry for exigent circumstances in the context of a criminal investigation. Thus, the test to be employed in cases such as the present one is whether, under the totality of the circumstances, a well-trained police officer reasonably would have believed that a warrantless entry was necessary to assist a person inside in need of immediate aid.

Against this test, we conclude that the trial court did not err in finding that the emergency doctrine justified the entry. The court found that the police believed that the defendant was in immediate need of aid, that their only purpose in entering the apartment was to protect the defendant and others, and that the defendant had not been located at the time of their entry into his home.

Our review of the record reveals that, on the evening of September 28, 1987, the police hastened to find the

defendant, whom they had every reason to believe was despondent, intoxicated, armed and possibly suicidal. Additionally, the police had received information that a gunshot had either been fired or that a shotgun had been activated by a pumping action. When the police arrived at the defendant's home, they were uncertain as to his whereabouts. Although the defendant's housemates told the police that they had seen him leave the house before the police arrived, they conceded that they had left the house after the defendant's departure and that, according to the testimony, "[h]e could have come back by the time that we went to the police station and back." It is clear that the police had a reasonable basis to believe that an emergency existed and that the defendant might well have been inside the apartment in need of immediate aid.

There also is no evidence that the entry was pretextual. The trial court found that the defendant was unknown to the police prior to the night in question, that he was suspected of nothing and that the only initial concern the police had for him was to render him assistance. " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' *Wayne* v. *United States,* 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.)" *Mincey* v. *Arizona,* supra, 392–93. As long as there is an objectively reasonable belief upon which the entry is predicated, it will be sustained even if it develops that no emergency did exist. *Wayne* v. *United States,* supra.

Once the police were inside of the defendant's home, they were permitted to seize any evidence of an incriminating nature that was in plain view during the course of their legitimate emergency activities. *Mincey* v. *Arizona,* supra, 393; *State* v. *Magnano,* supra. The record indicates, and the trial court found, that the search for the defendant was limited to those places where he

might have been hiding, and that, in the course of this activity, the police came upon the contraband in plain view. This case does not present the scenario of a prohibited general exploratory search. See *Mincey* v. *Arizona,* supra ("a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,' *Terry* v. *Ohio,* [392 U.S. 1, 25–26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)])."

The defendant also contends that the warrantless entry was nonconsensual and therefore prohibited by the fourth amendment. The trial court's ruling regarding the emergency exception to the warrant requirement obviated the need for a finding on the consent issue. Similarly, because we have concluded that the entry was proper under the emergency doctrine, we need not reach this claim. See *State* v. *Enright,* supra, 150.[2]

There is no error.

In this opinion the other judges concurred.

---

[2] We note that in its brief the state concedes that it has abandoned its claim that the entry was consensual.