## STATE OF CONNECTICUT *v.* CRAIG HOTH
### (AC 17615)

O'Connell, C. J., and Lavery and Dupont, Js.

Argued May 26—officially released August 25, 1998

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Paul Ferencek*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael Pepper*, former assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Craig Hoth, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] On appeal, the defendant claims that the trial court

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

improperly (1) denied his motion to suppress evidence derived from a warrantless entry into the home he shared with the victim pursuant to the emergency exception to the warrant requirements of both the federal and state constitutions and (2) admitted hearsay evidence concerning a statement the victim made to a witness. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. For a number of months prior to the murder, the victim and the defendant were roommates at the victim's condominium in Meriden. On Tuesday, December 20, 1994, at approximately 8:10 p.m., the Meriden police department was notified by Andrew Lucibello, 49, the victim's cousin, and Roger Turner, 27, the victim's former roommate, that the victim, Louis Perrotti, was missing. The complainants reported that the victim had not been seen or heard from by friends and relatives for the previous three days. The victim did not return telephone messages left on his answering machine or answer the door at his condominium. Such behavior on the part of the victim was highly unusual, as he was known for his regular habits. The victim, a successful and well respected businessman, did not appear at work on Monday and Tuesday. Although he had recently sold his dry cleaning business in Wallingford, the victim continued to work at the business to help the new owner learn the trade.

In addition, Lucibello reported that the Wallingford police had attempted to reach the victim at his place of employment because a van registered in his name had been used in connection with a credit card scam in New Haven that day. Lucibello was concerned because the victim had no criminal record and would not have lent his van to anyone or permitted it to be used for criminal purposes. Also, the victim's van was not at his condominium. Sergeant Jeffrey Cossette of

the Meriden police department confirmed the suspicious use of the van with the New Haven police.

Lucibello and Turner also informed Cossette that the defendant had an extensive criminal record. Cossette conducted a record check of the defendant and confirmed that the defendant had a criminal record consisting of multiple convictions. Lucibello persisted in his concern for the victim's welfare because his failure to go to work was completely out of character. He feared that the victim was disabled in his condominium. On the basis of that information, Cossette, Detective Patrick Hettrick and another officer went to the condominium. Turner had a key to the condominium and met the police there. When the police arrived at the condominium, they knocked on the door but received no answer. There were no signs of forced entry, and nothing unusual was apparent. Turner gave the police his key, which they used to enter the premises. While Turner and Lucibello remained outside, the police searched the top two floors of the three-story condominium. Cossette noticed a stain on the living room carpet and went to the lower-level garage, where the police found blood-like stains and footprints in the center of the floor. One of the officers noticed a blood-soaked sheet behind some boxes and found the victim's body there. The body had multiple stab wounds, including defensive wounds.

Lucibello identified the victim, and shortly thereafter the state's medical examiner arrived at the scene and pronounced the victim dead.[2] The police secured the crime scene and sought a search warrant for the condominium. The police later obtained additional search warrants for the victim's van and the defendant's person. The defendant was arrested and charged with murder in May, 1995.

---

[2] An autopsy later revealed that the victim had died of a stab wound to the chest.

I

The defendant first claims that the trial court improperly denied his motion to suppress evidence derived from the warrantless entry into the home he shared with the victim pursuant to the emergency exception to the warrant requirement in violation of the fourth[3] and fourteenth[4] amendments to the United States constitution and article first, § 7,[5] of the constitution of Connecticut. We disagree.

The same standard of review applies to emergency doctrine claims under both the state and federal constitutions. *State* v. *Blades*, 225 Conn. 609, 624, 626 A.2d 273 (1993). "Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton* v. *New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant. *Steagald* v. *United States*, 451 U.S. 204 [101 S. Ct. 1642, 68 L. Ed. 2d 38] (1981); *Payton* v. *New York*, [supra, 586]; *Johnson* v. *United States*, 333 U.S. 10 [68 S. Ct. 367, 92 L. Ed. 436] (1948). *Donovan* v. *Dewey*, 452 U.S. 594, 598 n.6, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981). *State* v. *Reagan*, [209 Conn. 1, 8, 546 A.2d 839 (1988)]. The burden is on the state to show that an exception exists. *State* v.

---

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4] The fourth amendment to the United States constitution was made applicable to the states through the fourteenth amendment's due process clause. *Mapp* v. *Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[5] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

*Harris,* [10 Conn. App. 217, 224, 522 A.2d 323 (1987)]." (Internal quotation marks omitted.) *State* v. *Enright,* 17 Conn. App. 142, 147, 550 A.2d 1095 (1988).

"The terms exigent circumstances and emergency doctrine are often used interchangeably when discussing warrantless entries into a home. The term exigent circumstances, however, generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization. *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978). *State* v. *Guertin,* 190 Conn. 440, 447, 461 A.2d 963 (1983); *State* v. *Reagan,* 18 Conn. App. 32, 556 A.2d 183 [cert. denied, 211 Conn. 805, 559 A.2d 1139] (1989); *State* v. *Harris,* [supra, 10 Conn. App. 227.] The emergency exception refers to another type of warrantless entry that evolves outside the context of a criminal investigation and does not involve probable cause as a prerequisite for the making of an arrest or the search for and seizure of evidence. The present case is of the latter type.

"This second type of warrantless entry was recognized by the United States Supreme Court in *Mincey* v. *Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and adopted by the Connecticut Supreme Court in *State* v. *Magnano,* 204 Conn. 259, 528 A.2d 760 (1987). In *Mincey* v. *Arizona,* [supra, 385], the United States Supreme Court recognized the exigency or emergency exception to the warrant requirement. The court held that the fourth amendment does not bar police officers, when responding to emergencies, from making warrantless entries into premises and warrantless searches when they reasonably believe that a person within is in need of immediate aid. Id., 392–93. *State* v. *Magnano,* supra, 266.

"Our Supreme Court has defined the standard for determining what constitutes exigent circumstances

allowing warrantless entries for arrests, searches and seizures based on probable cause of criminal activity. In *State* v. *Guertin,* supra, [190 Conn.] 453, the court adopted the so-called *Canby* rule which requires that, under the totality of the given circumstances, a police officer has reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or other wise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. The test is an objective one. [I]ts preeminent criterion is what a *reasonable,* well-trained police officer would believe, not what the arresting officer actually did believe. . . . Id., quoting *State* v. *Canby,* [162 W. Va. 666, 669, 252 S.E.2d 164 (1979)]; *State* v. *Enright,* supra, [17 Conn. App.] 148.

"The present case raises the question of what test is to be employed in determining the reasonableness of the police officer's belief that a person within the home is in need of immediate aid—the situation in which that officer is faced with an emergency not involving a need for an immediate arrest or a search for evidence. We conclude that this test should be no less stringent than that adopted in *Guertin.*

"In reaching this conclusion, we note that there is a significant difference between a police entry for the purpose of making an arrest, or searching for evidence incident to a criminal investigation and an entry for the purpose of rendering aid or saving a human life. Although probable cause is the standard by which we judge the former situation, reasonable belief determines the latter. *Mincey* v. *Arizona,* supra, [437 U.S.] 392; *State* v. *Magnano,* supra [204 Conn. 266]." (Emphasis in original; internal quotation marks omitted.) *State* v. *Klauss,* 19 Conn. App. 296, 300–302, 562 A.2d 558 (1989).

"[G]iven the rationale for this very limited exception, the state actors making the search must have reason

to believe that life or limb is in immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat. *Good* v. *Dauphin County Social Services*, 891 F.2d 1087, 1094 (3d Cir. 1989). The police, in order to avail themselves of this exception, must have valid reasons for the belief that an emergency exists, a belief that must be grounded in empirical facts rather than subjective feelings . . . . *People* v. *Mitchell*, 39 N.Y.2d 173, 178, 347 N.E.2d 607, 383 N.Y.S.2d 246, cert. denied, 426 U.S. 953, 96 S. Ct. 3178, 49 L. Ed. 2d 1191 (1976). It is an objective and not a subjective test. The test is not whether the officers actually believed that an emergency existed, but whether a reasonable officer would have believed that such an emergency existed. *State* v. *Klauss*, [supra, 19 Conn. App. 302]; see *State* v. *Guertin*, [supra, 190 Conn. 453] (adopting objective test for warrantless felony arrest exigency analysis); see also *United States* v. *Zabare*, 871 F.2d 282, 291 [(2d Cir.), cert. denied, 493 U.S. 856, 110 S. Ct. 161, 107 L. Ed. 2d 119 (1989)] (test for determining whether a warrantless entry was justified by exigent circumstances is an objective one. . . . *State* v. *Geisler*, [222 Conn. 672, 691–92, 610 A.2d 1225 (1992)]." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 75–76, 646 A.2d 835 (1994) (*Berdon, J.*, dissenting), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

"[I]n reviewing a trial court's ruling on the emergency doctrine, subordinate factual findings will not be disturbed unless clearly erroneous and the trial court's legal conclusion regarding the applicability of the emergency doctrine in light of these facts will be reviewed de novo. *State* v. *Geisler*, [supra, 222 Conn. 694]. Conclusions drawn from the underlying facts must be legal and logical. Id., 693. We must determine, therefore, whether, on the facts found by the trial court, the court properly concluded that it was objectively reasonable

for the police to believe that an emergency situation existed." (Internal quotation marks omitted.) *State* v. *Blades*, supra, 225 Conn. 617.

"As a prefatory matter, we note that the emergency doctrine is rooted in the community caretaking function of the police rather than its criminal investigatory function. We acknowledge that the community caretaking function of the police is a necessary one in our society. [I]t must be recognized that the emergency doctrine serves an exceedingly useful purpose. Without it, the police would be helpless to save life and property, and could lose valuable time especially during the initial phase of a criminal investigation. E. Mascolo, The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment, 22 Buff. L. Rev. 419, 428 (1973). Constitutional guarantees of privacy and sanctions against their transgression do not exist in a vacuum but must yield to paramount concerns for human life and the legitimate need of society to protect and preserve life . . . . *People* v. *Mitchell*, [supra, 39 N.Y.2d 180]." (Internal quotation marks omitted.) *State* v. *Blades*, supra, 225 Conn. 619.

Our de novo review of the record reveals that the facts of this case typify those that call on police departments to exercise their community caretaking function. The fact pattern bears some resemblance to *Blades* in that the victim's relatives sought police assistance when she failed to appear at her place of employment and failed to respond to the telephone calls of friends and relatives.[6] Cossette was told by Lucibello and Turner that the victim, a man of regular habits and routine, had failed to appear at work for two days, had not been returning telephone messages left on his answering

[6] We note that the suspicious behavior of the *Blades* defendant, the victim's husband in that case, is absent in this fact pattern. That element of suspicion, however, is satisfied by the criminal activity involving the victim's motor vehicle.

machine, and that two police departments were looking for him for questioning about the use of his van in criminal activity.

At oral argument, the defendant claimed that it was not objectively reasonable for Cossette to believe that entry into the condominium was necessary to protect or preserve the victim's life and postulated several scenarios as to why the victim may not have appeared at work for two days, e.g., the victim went away for the weekend and decided to extend his stay. Although this argument may be valid if the victim's absence from work were the only information Cossette had, it fails here because it does not consider the fact that the police were looking for the victim. The subordinate facts are that Lucibello and Turner went to the Meriden police department on Tuesday, the second day the victim had failed to appear at work, after the Wallingford police, in conjunction with a New Haven police investigation, came to the victim's place of employment to inquire about the victim's van. Cossette confirmed that the New Haven police were looking for the victim and he also confirmed that the victim's roommate had a criminal record. Furthermore, Cossette was told that the victim, who had recently sold his business, was a well respected businessman, and Lucibello emphasized the victim's reputation and habits for hard work and punctuality.

On the basis of our de novo review, we conclude that Cossette's belief that there was something physically wrong with the victim was reasonable and was predicated on the subordinate facts. When the Meriden police entered the condominium, they did so in their community caretaking function to protect or preserve the victim's life. The fact that they discovered the defendant's horrendous crime does not affect the reasonableness of Cossette's belief that the entry was necessary.[7] We

[7] Because we hold that the search was reasonable, we need not reach the defendant's subordinate claim that the evidence derived from the search was tainted.

therefore conclude that the defendant's motion to suppress the evidence was properly denied.

## II

The defendant's second claim is that the trial court improperly admitted hearsay evidence of an out-of-court statement to a third party. The defendant's claim lacks merit.

The following facts are necessary for our analysis of the defendant's claim. On Saturday, December 17, 1994, the victim had dinner with Anthony DiGennaro in Waterbury. After their meal, the two went to DiGennaro's apartment. DiGennaro knew that the defendant was the victim's roommate. During the course of the evening, DiGennaro asked the victim whether the defendant was still living in his condominium. The defendant objected to DiGennaro's testifying about the substance of the defendant's answer to DiGennaro's question as hearsay. The state made an offer of proof outside the presence of the jury. According to DiGennaro, the victim responded, "Yes, but he is moving out, as a matter of fact, he should be moving out right about now." The state explained the purpose of the offer was to demonstrate the states of mind of the defendant and the victim. The trial court permitted DiGennaro to testify as to the victim's response pursuant to *State* v. *Alvarez*, 216 Conn. 301, 579 A.2d 515 (1990). The trial court instructed the jury that the answer was "not being offered for the truth of the content."

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . .

We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . . *State* v. *Leonard*, 31 Conn. App. 178, 190, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993), appeal withdrawn January 7, 1994. . . . *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291 [cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996)]." (Internal quotation marks omitted.) *State* v. *McClendon*, 45 Conn. App. 658, 671, 697 A.2d 1143, cert. granted on other grounds, 243 Conn. 943, 704 A.2d 799 (1997).

"A statement made [out of court] that is offered to establish the truth of the matter contained in the statement is hearsay, and as such is inadmissible. *State* v. *Packard*, 184 Conn. 258, 274, 439 A.2d 983 (1981). An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted. *State* v. *Rollinson*, 203 Conn. 641, 660, 526 A.2d 1283 (1987); *State* v. *Hoeplinger*, 27 Conn. App. 643, 649, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992); C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 11.3.2 [pp. 322–24]." *State* v. *Blades*, supra, 225 Conn. 632.

We disagree with the defendant's claim that the victim's statement to DiGennaro was hearsay. The state did not offer the statement for the truth of the matter contained in it, but rather to illustrate the states of mind of the victim and the defendant. "A statement that is offered to show its effect upon the hearer, however, is not hearsay. *State* v. *Hull*, 210 Conn. 481, 499, 556 A.2d 154 (1989); *State* v. *Silveira*, [198 Conn. 454, 473, 503 A.2d 599 (1986)]; *State* v. *Zdanis*, 173 Conn. 189, 192 n.1, 377 A.2d 275 (1977); *State* v. *John*, 210 Conn. 652, 680, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989)." (Internal quotation marks omitted.) *State* v. *Alvarez*, supra, 216 Conn. 310–11. The

victim's out-of-court statement to DiGennaro is evidence of disagreement or tension between the victim and the defendant.

To admit an out-of-court statement on this ground, the declarant's state of mind must be relevant. *State* v. *Blades*, supra, 225 Conn. 633. Evidence is relevant " 'when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' " *State* v. *Fritz*, 204 Conn. 156, 168, 527 A.2d 1157 (1987). There was evidence that Turner was to move back into the condominium when the defendant moved out. The defendant had told an employee at the victim's place of business that Turner was moving back into the condominium and that the victim did not want the defendant to object. The victim's statement, thus, supported the state's theory of motive because it constituted evidence from which the jury could infer that the parties were at odds at the time of the murder.

Furthermore, the admission of the victim's out-of-court statement was not prejudicial to the defendant in light of the other evidence of the defendant's guilt. The jury could reasonably have found that neighbors heard a commotion in the condominium at the approximate time of the victim's death. Shortly after the murder, the defendant was observed driving the victim's van in New Haven. The defendant returned to the condominium with Darrin Stanley to use drugs. Prior to entering the condominium, the defendant told Stanley he had killed a deer that day and brought it into the condominium where it came back to life. The defendant explained that he had to "rekill" the deer, which bled on the carpet. The defendant did not permit Stanley to enter the garage of the condominium. During the time the police were searching the condominium, the defendant was drinking in a bar with Kevin Guckin and told Guckin that his roommate had been stabbed to death. The victim's death had not been made public at the

time of the defendant's statement to Guckin, and the cause of death was not released until after the autopsy was performed.

The judgment is affirmed.

In this opinion the other judges concurred.