[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
CT Page 5227
The defendant, Donald J. Lavole, was arrested on October 13, 1999 in East Lyme, Connecticut and charged by the East Lyme Police Department with operating a motor vehicle under the influence of liquor or drugs in violation of C.G.S. § 14-227a.
On January 10, 2000, the defendant filed a motion to suppress all evidence seized as a result of his detention and arrest, including field sobriety tests and blood alcohol test results.
The defendant claims that the East Lyme Police lacked a "specific and articuable factual basis" to stop his vehicle, and probable cause to arrest him, under our state and federal constitutions.
 Factual Findings
The court has carefully considered all of the evidence and testimony introduced at the hearing on this motion and makes the following factual findings:
On October 13, 1999, at approximately 1:30 a.m., Officer Jean Cavanaugh of the East Lyme Police Department was on patrol on Route 161 (which is also known as Flanders Road) in East Lyme. Officer Cavanaugh was in uniform and driving a police cruiser. At around this time she observed a motor vehicle, operated by the defendant, traveling northbound on Route 161.
Officer Cavanaugh watched the defendant's automobile pull into the parking lot of a donut shop on Route 161. The business was closed, but lights in the establishment's parking lot were on.
The defendant parked his motor vehicle on the side of the donut shop building. He was alone in the automobile. Officer Cavanaugh observed the defendant exit his vehicle from the operator's side door. The defendant then opened a rear door and laid down on the back seat of his automobile.
Officer Cavanaugh did not observe any erratic operation by the defendant. She testified that the defendant was driving slowly, but did not commit any motor vehicle violations.
Officer Cavanaugh testified she found the defendant's actions in reclining on the rear seat of his vehicle to be "unusual". She subsequently drove her cruiser behind the defendant's parked vehicle. CT Page 5228 The cruiser's headlights were on and Officer Cavanaugh briefly activated its emergency flashing lights in order that the defendant would know she was a police officer. Officer Cavanaugh then approached the defendant's vehicle on foot.
During direct examination, Officer Cavanaugh testified that she was concerned that the defendant could have been ill, and wanted to ascertain if he was all right. She testified that she approached the defendant out of concern for his well-being. Officer Cavanaugh also testified that while there could have been any number of reasons for the defendant's actions, she believed that he could have been ill and felt obligated to check on him.
On cross examination, the officer admitted that she had not noted her concern that the defendant was ill, or that a possible emergency existed, anywhere in her written arrest report.[1] She stated that she did not know if there was an emergency when she approached the defendant.
Officer Cavanaugh tapped on the vehicle's rear window and instructed the defendant to lower the window. The defendant opened the rear door and exited the vehicle.
Officer Cavanaugh asked the defendant for his license, registration and insurance card. She asked the defendant what he was doing, and if he was "okay". She testified that the defendant's speech was slurred, his eyes were red and an odor of alcoholic beverage emanated from his person. The defendant's only response to the officer's questions was that he was going to "stay here a while".
Officer Cavanaugh testified that she would not have permitted the defendant to leave the scene until she had ascertained what was transpiring. The court finds that the defendant's liberty was restrained by the police officer at the moment the officer positioned her cruiser behind the defendant's vehicle.
Officer Cavanaugh subsequently arrested the defendant at the scene for operating a motor vehicle under the influence of liquor or drugs.
 Discussion
"[A] person [is defined] as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained." (Internal citations omitted.). State v.Donahue, 251 Conn. 636, 642-643 (1999). CT Page 5229
Brief investigatory seizures and detentions of motorists are permitted by our state and federal constitutions when the police ". . . have a reasonable and articuable suspicion that the occupants of a vehicle have engaged, are engaged or are about to engage in criminal activity." (Internal citations omitted). State v. Anderson,24 Conn. App. 438, 441 (1991); State v. Pierog, 33 Conn. App. 107,111 (1993).
"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . A court reviewing the legality of a stop must, therefore, examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Internal citations and internal quotation marks omitted.) State v. Donahue,
supra, p. 643-644.
In the Donahue case, our Supreme Court held that police did not have a reasonable and articuable suspicion to detain a motorist after an officer observed the suspect operator and a companion parked in the lot of a closed social club at approximately 1:50 a.m. The court held that because the operator had not driven erratically, committed a motor vehicle violation nor exhibited furtive conduct, the police lacked reasonable and articuable suspicion that the defendant had committed or was about to commit a crime. State v. Donahue, supra, p. 648.
Although many of the facts here are similar to those in the Donahue
case, the state argues that the Donahue holding is inapplicable.
The state contends that the officer did not detain the defendant for investigative purposes. The state maintains that the officer was performing a community caretaking function when she approached the defendant's vehicle to ascertain if the defendant was ill or needed assistance, after she observed him lie down on the automobile's rear seat.
The state's argument appears to be predicated upon the "emergency exception" to the general constitutional mandate that warrants are required to initiate searches and seizures, or to make arrests.
Our state and federal appellate courts have determined in search and seizure cases that ". . . there is a significant difference CT Page 5230 between a police entry for the purpose of making an arrest or searching for evidence incident to a criminal investigation, and an entry for the purpose of rendering aid or saving a human life. Although probable cause is the standard by which we judge the former situation, reasonable belief determines the latter." (Internal citations omitted.) State v. Hoth, 50 Conn. App. 77 (1998). See alsoState v. Blades, 225 Conn. 609, 626 A.2d 273 (1993), and State v.Geisler, 222 Conn. 672 (1992).
"The police, in order to avail themselves of this exception, must have valid reasons for the belief that an emergency exists, a belief that must be grounded in empirical facts rather than subjective feelings . . . It is an objective and not a subjective test. The test is not whether the officers actually believed that an emergency existed, but whether a reasonable officer would have believed that such an emergency existed." (Internal citations and quotation marks omitted.) State v. Hoth, supra, p. 84.
Based on the evidence presented, the court does not find that there was sufficient reason to believe that an emergency situation existed.
The court is mindful that the boundary line between a police officer's investigative duties and community care taking responsibilities is frequently ill-defined.
However, based upon the totality of the evidence presented in this case, the court finds by a preponderance of the evidence that the detention of the defendant was initiated for investigative purposes.
The court attaches significance to the fact that the officer did not mention in her report that she approached and detained the defendant out of concern that he was ill or in an emergency situation.
The officer observed the defendant alight from the front seat of his vehicle and lie down on its rear seat. There was no evidence offered that the defendant displayed any symptoms of illness, injury or distress when he did so.
The court also notes that although the officer inquired if the defendant was "okay", she asked him what he was doing, and directed him to produce his license, registration and insurance information at the outset of her contact with him.
Absent some other indicia of illness or danger, the court cannot find that the defendant's act of reclining in the back seat of his own automobile gave rise to the reasonable belief that an emergency existed. CT Page 5231
The court finds that the investigative detention of the defendant was not based upon reasonable and articuable suspicion that he had committed, or was committing a crime. As noted above, the court also finds that the officer's actions were not otherwise justified under the so-called "emergency exception" or any corollary police community caretaking function,
In accordance with our Supreme Court's holding in State v. Donahue, supra, and based on all the facts and circumstances presented, this court finds therefore that the detention and seizure of the defendant violated the provisions of Article First, Sections 7 and 9 of the Connecticut Constitution.
Accordingly, the defendant's motion to suppress all evidence seized or discovered as a result of his detention and arrest on October 13, 1999 is hereby GRANTED.
Dyer, J.